234 P.2d 430

**GUSICK v. BOIES, Sheriff.**

**No. 5548.**

Supreme Court of Arizona.

July 13, 1951.

George T. Wilson, of Phoenix, for petitioner.

Warren L. McCarthy, Co. Atty., and John J. Flynn, Dep. Co. Atty., Phoenix, for respondent.

UDALL, Chief Justice.

Petitioner, Charles A. Gusick, invoked the jurisdiction of this court by filing an original application in habeas corpus. After a formal hearing on July 3, 1951, we discharged him from custody without the posting of further bond. In obedience to the requirements of article 6, section 2, Constitution of Arizona, the court now states the grounds for the action taken.

A brief summary of prior proceedings had against the petitioner is essential to an understanding of the question presented in the instant application. On June 26, 1951, in the habeas matter of Gusick v. Boies, 72 Ariz. 233, 233 P.2d 446, we unanimously held that bail exacted of petitioner in the total sum of $150,000 in two criminal cases then pending in the superior court of Maricopa county was excessive, and it was ordered reduced to the aggregate sum of $60,000 ($30,000 in each case) and the sheriff was directed to discharge the petitioner upon his giving bail in this sum. Such bail was furnished and the petitioner was released but before he could get out of the courthouse he was rearrested by the sheriff on eight other related charges filed by the county attorney. Bail aggregating $27,500 was required by the lower tribunals on these additional charges. This was furnished and petitioner, upon making such bail, was released from custody. The maximum penalty that could be imposed on petitioner if convicted of all the 31 counts embraced in the first two informations totaled 245 years. If the last eight charges are added thereto it can be seen that the potential punishment extends many times beyond the normal life of man.

Thereafter, on June 30, 1951, the county attorney caused to be filed in the justice court of the West Phoenix precinct another complaint charging the petitioner with the crime of sodomy, and bail was fixed by said court in the sum of $3500, in default of which the petitioner went back to jail believing that he would be faced with other similar charges regardless of whether he was able to furnish this bail. This petition was then filed and we issued a writ of habeas corpus re-

turnable forthwith. The sheriff produced petitioner, in obedience to the command of the writ, and a hearing was had in open court upon the oral return of the respondent sheriff who was represented by the county attorney. At the conclusion of the hearing a minute order was entered vacating and setting aside the order of the justice of the peace fixing bail in the sum of $3500 and discharging petitioner without the giving of further bail. (Justice Stanford dissented from the order discharging petitioner without further bail as he was of the opinion that additional bail in what he considered the reasonable sum of $2000 should be required rather than the bail of $3500 fixed by the magistrate.)

■ From a mere recitation of the steps taken by the county attorney subsequent to our decision as to what constituted reasonable bail in this matter, it appears obvious that the prosecuting officers—the opinion of this court to the contrary notwithstanding—have proceeded upon the theory that petitioner is so vile and the crimes charged so reprehensible and revolting that he should not be allowed his freedom on bail to mingle in society. The method pursued to keep the petitioner in jail was the practice of filing multitudinous charges and obtaining orders from the magistrates requiring additional bail, thus circumventing the constitution as well as flouting the clear intent of this court's previous decision. These tactics hardly comport with our concept of American justice. The guarantees provided by the federal and state constitutions apply equally to all and they cannot be denied to any one person without weakening the rights of all. Merely because a defendant may be considered by the prosecutor (and the magistrates charged with the duty of admitting to bail) as being unfit to mingle in society does not justify denying him the right to bail pending trial. Under the law, regardless of the character of the crime or what the facts may be, the accused at this time is clothed with the presumption of innocence.

■ As was pointed out in the first opinion, Gusick v. Boies, supra, bail is exacted for the sole purpose of securing the attendance in court of the defendant when required, and any bail fixed at more than is necessary for this purpose is deemed excessive within the meaning of the constitution. Furthermore, we stated therein that excessive bail is not to be required for the purpose of preventing the prisoner from being admitted to bail nor reasonable bail denied for the purpose of punishing a person charged with crime. A cursory examination of court records, both territorial and state, indicates that bonds aggregating $87,500 as required of petitioner in the instant case are far in excess of any bail ever exacted of any defendant for any offense in the 88 year annals of Arizona jurisprudence.

■ The law is well settled that the power to require bail is not to be so used

as to make it an instrument of oppression. Ex parte Castillo, 102 Tex.Cr.R. 52, 277 S.W. 126, cited in the Annotation appearing in 53 A.L.R. 399. Another factor that must be considered in fixing the amount of bail in a given case is the fact that the accused is under bond for appearance at trial in other cases. 6 Am.Jur., Bail and Recognizance, sec. 87. See also Annotation, Bail, Factors Fixing Amount, 72 A.L.R. 821, and cf. Green v. Petit, 222 Ind. 467, 54 N.E.2d 281; State v. Mistich, 182 La. 43, 161 So. 14; Ex parte Ruef, 7 Cal.App. 750, 96 P. 24; State ex rel. Corella v. Miles, 303 Mo. 648, 262 S.W. 364, 365. In the latter case it is stated: " * * * The bail bond must be fixed with a view to giving the prisoner his liberty, not for the purpose of keeping him in jail. * * *"

No one would contend that the $3500 bail fixed by the magistrate in the instant case (or the $2000 bail favored by Justice Stanford) was unreasonable if it stood alone; it is the cumulative effect of this bail and the bonds previously exacted that makes it excessive. This factor was apparently given no consideration in determining what would be nonexcessive bail in the instant case. It was for these reasons that this court reached the conclusion that the requirement for additional bail, under all of the circumstances, was unreasonable and oppressive and in violation of petitioner's constitutional right to bail that "is not excessive".

Petitioner discharged without further bond.

PHELPS, DE CONCINI and LA PRADE, JJ., concurring.

STANFORD, Justice (dissenting).

I cannot agree with the majority opinion and in support of my dissent, I quote from the case of Ex parte Black, 140 Cal. App. 361, 35 P.2d 355, 356: "The petition for a writ of habeas corpus to obtain a reduction of bail is denied. There are numerous considerations entering into the determination of the amount of bail to be required by the trial court in any case. In re Tsuji Horiuchi, 105 Cal.App. 714, 288 P. 708; Ex parte Ruef, 7 Cal.App. 750, 96 P. 24; In re Williams, 82 Cal. 183, 23 P. 118. Under the authorities cited, this court must assume in this proceeding that * * * the trial court determined from the facts before it that the bail fixed was reasonably necessary. Furthermore, it is well settled that this court should not reduce the bail unless it clearly appears that the trial court has abused its discretion. There has been no showing made of an abuse of discretion herein."

And from 8 C.J.S., Bail, § 51(b)(2), I quote: "The exercise of discretion by a court or officer in fixing the amount of bail is subject to review, but his decision will not be disturbed by the appellate court unless an abuse of power is clearly shown, for *the action of the trial court is presumed*

*to be well founded until such presumption is overcome by some character of proof."* (Emphasis supplied.)

At the hearing had before this court there was no offer of proof whatsoever that the action of the lower tribunal, in imposing the additional $3,500 bond, was not reasonable or that it was an abuse of power. The only matter presented to this court, material to the issue here was an affidavit signed by the petitioner, alleging that petitioner was without funds and unable to meet the obligations of the additional bond imposed upon him by the lower tribunal.

Petitioner also contends in the above mentioned affidavit, that the additional charges filed by the county attorney were filed merely for the purpose of harassing petitioner. If true, this of course might offer grounds for a holding that the additional bail was unwarranted and excessive, but again there has been no offer of proof of these allegations. From the case of In re Mariano, 34 R.I. 534, 84 A. 1086, 1087, I quote: " * * * We are aware that a few courts have doubted their authority, in the absence of statute for that purpose, to require new or additional bail for the appearance of a respondent, while a recognizance already given by him for that purpose remained in full force, with its conditions unbroken, and the respondent had not been surrendered by the sureties. We find no such difficulty. In entering into such prior recognizance the petitioner acquired no vested rights superior to the right of the state to have him in court without fail when required. In such recognizance there is no express, and we find no implied, provision that he shall not be required, upon a change of circumstances, to furnish further bail. * * *"

See also People v. Eiseman, 69 Cal.App. 143, 230 P. 669 and Ex parte Wasson, 50 Tex.Cr.R. 361, 97 S.W. 103.

In the case of People ex rel. Rothensies v. Searles, 229 App.Div. 603, 243 N.Y.S. 15, 17, the court said: " * * * The nature of the offense, the penalty which may be imposed, the probability of the willing appearance of the defendant or his flight to avoid punishment, the pecuniary and social condition of defendant, and his general reputation and character, and the apparent nature and strength of the proof as bearing on the probability of his conviction—all these are elements which may properly be taken into consideration by the court in determining the amount of bail."

From 6 Am.Jur., Bail and Recognizance, section 33, I quote: "In the absence of constitutional or statutory provisions to the contrary, the granting of bail lies within the discretion of the court, subject to certain established principles and precedents. Such power to grant bail is regulated, to a large extent, by the facts and circumstances of each particular case. * * *"

In this respect I feel duty bound to mention that petitioner was at the date of the

314

hearing before this court charged with 41 separate offenses, embodying 6 separate and distinct crimes as set out in the Arizona Code Annotated, 1939, among which are sodomy, fellatio, illegal possession of narcotics and contributing to the delinquency of minors. A.C.A. 1939, §§ 43–406, 43–407, 68–803, 43–1008. It is of course well settled law that where the bail required does not appear to be excessive as measured by the character of the offense, the mere inability of the accused to procure bail in the amount required does not make it excessive. Ex parte Spoon, 18 Okl.Cr. 703, 192 P. 698; Ex parte Paul, 36 Okl.Cr. 86, 252 P. 853; People ex rel. Sammons v. Snow, 340 Ill. 464, 173 N.E. 8, 72 A.L.R. 801 and cases cited therein.

Concerning the excessiveness of the aggregate amounts imposed on petitioner, the majority opinion concedes that if the offenses were charged each individually and separately and bond imposed accordingly, that each one would not be excessive. In the case of People v. Eiseman, supra, where the defendant was convicted of eight separate charges of felony and sentenced to consecutive terms of imprisonment and bail was imposed as to each, the court held that the aggregate bail was not excessive, where none of the charges were duplicates and the amounts were not separately excessive.

For the foregoing reasons, I dissent from the majority opinion.