[Crim. No. 14130. In Bank. Oct. 2, 1970.]

In re CLENNON WASHINGTON KING on Habeas Corpus.

## Counsel

Heisler & Stewart, Francis Heisler, Peter Haberfeld and C. B. King for Petitioner.

Oscar Williams and Charles Stephen Ralston as Amici Curiae on behalf of Petitioner.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Mark Leicester, Deputy Attorney General, for Respondent.

## Opinion

**TOBRINER, J.**—On February 7, 1967, after a nonjury trial, petitioner Clennon Washington King was convicted of failure to support his children in violation of Penal Code section 270.[1] Based on petitioner's absence from the state for 30 days, the offense was adjudged a felony. In this habeas corpus proceeding, petitioner attacks the constitutionality of the felony provision of section 270.[2] We hold that insofar as the section punishes

---

[1] Penal Code section 270 provides in relevant part: "A father of either a legitimate or illegitimate minor child who willfully omits without lawful excuse to furnish necessary clothing, food, shelter or medical attendance or other remedial care for his child is guilty of a misdemeanor and punishable by a fine not exceeding one thousand dollars ($1000) or by imprisonment in a county jail not exceeding one year, or by both such fine and imprisonment. If the father, during such violation, remains out of the state for 30 days, or if he fails or refuses to comply with the order of a court of competent jurisdiction requiring him to make any provision for the maintenance, support, medical treatment or other remedial care of such minor child and remains out of the state for 10 days without doing so, he is guilty of a felony. . . . Proof of abandonment or desertion of a child by such father, or the omission by such father to furnish necessary food, clothing, shelter or medical attendance or other remedial care for his child is prima facie evidence that such abandonment or desertion or omission to furnish necessary food, clothing, shelter or medical attendance or other remedial care is willful and without lawful excuse. . . . Proof of abandonment or desertion of a child by such father or the omission by such father to furnish such food, shelter, clothing or medical attendance or other remedial care for more than thirty (30) days is prima facie evidence that such father was outside the state."

[2] After we issued an order to show cause, petitioner was discharged from custody upon completion of his term. Because the burdens of a felony conviction are substantial and have a continuing impact upon the convicted defendant even after he has served his term, the discharge of petitioner during the pendency of this proceeding does not render his petition moot. (Cf. *Carafas* v. *LaVallee* (1968) 391 U.S. 234, 237 [20 L.Ed.2d 554, 558, 88 S.Ct. 1556]; *Sibron* v. *New York* (1968) 392 U.S. 40 [20 L.Ed.2d 917, 88 S.Ct. 1889]; *People* v. *Succop* (1967) 67 Cal.2d 785, 789-790 [63 Cal.Rptr. 569, 433 P.2d 473].) Similarly, although ordinarily a writ of habeas corpus will not be issued when the claimed error could have been, but was not, raised on appeal, petitioner's arguments are based in part on decisions of the United States

nonsupporting fathers who "remain out of the state for 30 days" more heavily than nonsupporting fathers who are within California, this penal provision establishes a classification not sufficiently related to any legitimate governmental objective, and as such violates the equal protection clause of our Constitution.

Petitioner, a school teacher and minister, spent his childhood, received his education, and was married in the South. Although petitioner held teaching credentials and had earned an advanced academic degree, he experienced difficulty in finding employment, apparently because he had been active in the early phase of the civil rights movement and had become a controversial figure. In December 1958, petitioner, his wife, and their five children moved to California, and purchased a home in Compton. After initiating procedures to obtain a California teaching credential (a process that was to take several months), petitioner obtained part-time employment in the post office and as a porter in a Beverly Hills department store. He began to build a congregation in a San Pedro church to which he had been appointed pastor, and, also, undertook the publication of a religious news-letter. His earnings were not sufficient to enable the family to retain the home they were purchasing, however, and it became necessary to give up the house, apply for public assistance, and move into public housing. The King's sixth child was born in July 1959.

In November 1959 petitioner moved his family to Rosarita Beach in Mexico in the belief that his missionary activities, which then consisted primarily of publishing the newsletter, could be carried on more econom-ically in Mexico. At the trial, petitioner testified that after learning that it was not possible formally to establish a permanent residence in Mexico at Tijuana, the nearest large city, he left his family on December 5, 1959, to go to Mexico City. He expected to be absent only a few days and left $50 with his wife for food and other necessities.

Mrs. King testified at trial that she was unaware of her husband's des-tination or plans and, thus, two days after his departure, on December 5, 1959, she left Rosarita Beach with her children and traveled to San Diego where she applied for, and received, public assistance. Mrs. King thereafter obtained employment as a licensed vocational nurse, but the family con-tinued to receive public assistance to supplement her earnings. Petitioner

Supreme Court rendered subsequent to his conviction and thus present "special circumstances" constituting an excuse for failure to employ the remedy of appeal. (*In re Black* (1967) 66 Cal.2d 881, 886-887 [59 Cal.Rptr. 429, 428 P.2d 293].) Moreover this court has uniformly held that the constitutionality of legislation is always open to challenge on habeas corpus (see, e.g., *In re Dixon* (1953) 41 Cal.2d 756, 762-763 [264 P.2d 513]).

contributed nothing to the support of the family after he left Rosarita Beach.

When petitioner learned that his wife and children had returned to the United States and were in San Diego, he attempted to contact them by letter. He did not follow them to San Diego, however, but instead traveled to Albany, Georgia, where he acquired a house, a store-front office, and a congregation, and repeatedly urged his wife and children to join him there. He sent letters, telephoned, and, finally, in July 1960, went to San Diego in an attempt to persuade his family to rejoin him, but Mrs. King and the children chose to remain in California.

California authorities then instituted nonsupport proceedings against petitioner, apparently under the Uniform Reciprocal Enforcement of Support Act,[3] and later sought petitioner's extradition for violation of Penal Code section 270. Several years thereafter, in 1966, King surrendered to authorities in Chicago, Illinois, waived extradition and was returned to California for criminal prosecution.

In California petitioner was charged by information with failure to support his children from July 1, 1960, through June 1, 1966, and with being absent from the state from July 10, 1960, through June 1, 1966, in violation of section 270 of the Penal Code. After a nonjury trial the court found King guilty of the charged felony. Although the trial court did not specifically find that petitioner had been out of the state for a 30-day period, the court, in rendering its judgment, fully reviewed petitioner's testimony regarding his activities since 1960. The testimony clearly established that King had been absent from the state for more than the statutory period. Under these circumstances the finding of defendant's absence from the state for the requisite period of time, implicit in the judgment of conviction, quite obviously rested on King's own testimony and not on the statutory presumption of absence.[4]

---

[3] Code of Civil Procedure, sections 1660-1661.

[4] Section 270 provides in part that "Proof of abandonment or desertion of a child by such father or the omission by such father to furnish such food, shelter or clothing or medical attendance or other remedial care for more than thirty (30) days is prima facie evidence that such father was outside the state." Although petitioner suggests that the trial court did not believe it necessary to make a specific finding as to absence in view of this presumption, on the instant record we are convinced that the court's conclusion was based on evidence introduced at trial rather than on the presumption.

If the conviction were grounded on this statutory presumption, however, it could not withstand constitutional due process scrutiny, for, as the Court of Appeal has held (*People* v. *Johnson* (1968) 258 Cal.App.2d 705, 709 [66 Cal.Rptr. 99]), there is no rational connection between the fact presumed (absence from the state) and the fact to be proved (more than 30 days of failing to support) (see *Leary* v. *United States* (1969) 395 U.S. 6, 36 [23 L.Ed.2d 57, 81, 89 S.Ct. 1532]; *People* v. *Stevenson* (1962) 58 Cal.2d 794, 797 [26 Cal.Rptr. 297, 376 P.2d 297]).

Petitioner attacks his felony conviction on the ground that the felony provision of section 270 violates constitutional strictures of equal protection. He argues that in punishing a father who "remains out of the state" more severely than a father remaining within the state, the provision establishes a classification not sufficiently related to any legitimate governmental purpose and effectively undertakes an impermissible, invidious discrimination against non-California residents. For the reasons discussed below, we conclude that the felony provision of section 270 must succumb to the constitutional attack mounted by petitioner.

 It is basic that the guarantees of equal protection embodied in the Fourteenth Amendment to the United States Constitution and article I, sections 11 and 21, of the California Constitution, prohibit the state from arbitrarily discriminating among persons subject to its jurisdiction. This principle, of course, does not preclude the state from drawing any distinctions between different groups of individuals, but does require that, at a minimum, classifications which are created bear a rational relationship to a legitimate public purpose. (*Rinaldi* v. *Yaeger* (1966) 384 U.S. 305, 308-309 [16 L.Ed.2d 577, 579-580, 86 S.Ct. 1497]; *Baxstrom* v. *Herold* (1966) 383 U.S. 107, 111 [15 L.Ed.2d 620, 623, 86 S.Ct. 760]; *Blumenthal* v. *Board of Medical Examiners* (1962) 57 Cal.2d 228, 233 [18 Cal. Rptr. 501, 368 P.2d 101].) Moreover, "in cases involving 'suspect classifications' or touching on 'fundamental interests' . . . the state bears the burden of establishing not only that it has a *compelling* interest which justifies the law but that distinctions drawn by the law are *necessary* to further its purpose." (*Westbrook* v. *Mihaly* (1970) 2 Cal.3d 765, 784-785 [87 Cal.Rptr. 839, 471 P.2d 847]; see *Shapiro* v. *Thompson* (1969) 394 U.S. 618, 638 [22 L.Ed.2d 600, 617, 89 S.Ct. 1322]; *Sherbert* v. *Verner* (1963) 374 U.S. 398, 406 [10 L.Ed.2d 965, 971, 83 S.Ct. 1790]. See generally *Developments in the Law—Equal Protection* (1969) 82 Harv.L. Rev. 1064, 1120-1131.)

Section 270 of the Penal Code, in prescribing varying penalties for its violation, distinguishes between two "categories" or "classifications" of nonsupporting fathers—(1) those nonsupporting fathers who "remain out of the state" for 30 days and (2) those who do not—and the section singles out those falling within the former classification for more severe punishment. Thus, under the section as presently drafted, any father who "remains out of the state" of California for 30 days while not supporting his child is guilty of a felony; a father who commits the identical act of criminal nonfeasance, but happens to be within California, is guilty only of a misdemeanor.

The application of this distinction may often lead to what appears to be

fortuitous, and even arbitrary, results. Thus, for example, if a father of a family in New York fails to provide support for his children, and his family subsequently moves to San Francisco, the father by remaining in New York for 30 days will be guilty of a felony; a nonsupporting father in Los Angeles whose family moves to San Francisco, will, by contrast, only be guilty of a misdemeanor if he remains in Los Angeles. Although the *criminal quality* of the New York father's conduct appears to be no different than that of the Los Angeles father, by the terms of section 270 he has committed a much more serious crime and is subjected to harsher penalties.

To justify this seemingly illogical classification the People proffer the two broad objectives which underlie the nonsupport provision generally— (1) to protect public funds from the financial burden of supporting children whose fathers are able to support them and (2) to deter fathers from subjecting their children to the adverse impact of becoming public charges. We can discern no rational relationship, however, between these unquestionably valid general purposes and the distinguishing factor—the *location* of a nonsupporting father—upon which the felony-misdemeanor classification turns. ■ As the Court of Appeal pointed out in *People* v. *Jones* (1967) 257 Cal.App.2d 235 [64 Cal.Rptr. 622], the nature of the crime of nonsupport does not vary with the place of its commission: "[d]iscrimination *solely* on the basis of location inside or outside of the state bears no more relation to the punitive and deterrent purposes of section 270 than differing locations of nonsupporting fathers within this state." (Original italics.) (257 Cal.App.2d at pp. 238-239.) As odious as the offense of nonsupport of a child may be, it does not take on varying ethical coloration because of its geographic locale. Thus, when viewed in relation to the main purposes of the criminal nonsupport provision, the classification drawn appears arbitrary and irrational.

Shifting its grounds of justification, the state argues in the alternative that another governmental purpose justifies the distinction drawn between fathers within and without California. The state contends that it has a legitimate interest in facilitating the enforcement of the support obligations of section 270, and reasons that because of the difficulty in enforcing such obligations against absent fathers, the provision serves to aid that enforcement by "encouraging" absent fathers to move to and remain in California. As we understand this contention, the state claims the authority to impose an additional criminal sanction simply to deter fathers from remaining out of the state. ■ Although we concede that the felony provision of section 270 may bear an arguable rational relationship to this goal of "encouraging" nonsupporting fathers to move to, or remain in, California, where they will be more amenable to this state's process, that relationship cannot justify

the classification. Such a purpose—to require individuals to move to or remain in California—lacks constitutional sanction because it violates the individual's constitutional right to choose his own domicile and to travel freely throughout the country.

As the United States Supreme Court noted in *United States* v. *Guest* (1966) 383 U.S. 745, 757-758 [16 L.Ed.2d 239, 248-249, 86 S.Ct. 1170]: "The constitutional right to travel from one State to another . . . occupies a position fundamental to the concept of our Federal Union. It is a right that has been firmly established and repeatedly recognized . . . [T]he right finds no explicit mention in the Constitution. The reason, it has been suggested, is that a right so elementary was conceived from the beginning to be a necessary concomitant of the stronger Union the Constitution created. In any event, freedom to travel throughout the United States has long been recognized as a basic right under our Constitution." (See *Edwards* v. *California* (1941) 314 U.S. 160, 178-181, 183-185 [86 L.Ed. 119, 127-129, 130-132, 62 S.Ct. 164] (Douglas, J. (joined by Black and Murphy, JJ.) and Jackson, J., concurring in separate opinions); *Twining* v. *New Jersey* (1908) 211 U.S. 78, 97 [53 L.Ed. 97, 105, 29 S.Ct. 14]; *Slaughterhouse Cases* (1873) 83 U.S. (16 Wall.) 36, 79 [21 L.Ed. 394, 409]; *Ward* v. *Maryland* (1871) 79 U.S. (12 Wall.) 418, 430 [20 L.Ed. 449, 452]; *Paul* v. *Virginia* (1869) 75 U.S. (8 Wall.) 168, 180 [19 L.Ed. 357, 360]; *Crandall* v. *Nevada* (1868) 73 U.S. (6 Wall.) 35, 43-44 [18 L.Ed. 745, 747]; *Passenger Cases* (1849) 48 U.S. (7 How.) 283, 492 [12 L.Ed. 702, 789]; *Corfield* v. *Coryell* (E.D.Pa. 1823) 6 F.Cas. 546, 552.)

The recent United States Supreme Court decision in *Shapiro* v. *Thompson* (1969) 394 U.S. 618 [22 L.Ed.2d 600, 89 S.Ct. 1322], clearly demonstrates that this constitutional "right to travel" embodies more than merely the right to cross state lines and move about the country; it includes as well the right of the individual freely to choose the state in which he wishes to reside. In *Shapiro*, the court, in examining the validity of residency requirements imposed by several states as a condition to receiving welfare benefits, found that a main purpose of such requirements was to inhibit the migration of needy persons into those states; the court rejected such a purpose as constitutionally impermissible in light of the needy individuals' "right to travel." The interest realistically impaired by the residence provisions at issue in *Shapiro* was not an indigent's right to "travel" across or within a given state, but his right to travel to, and make his home in, a particular state. In declaring that the impairment of an individual's choice to live wherever he wants within this country constitutes a violation of the individual's constitutional "right to travel," the court recognized that this historic and fundamental right rested not only on a view of the

states as necessary links in the network of a "national highway" (see *United States* v. *Guest* (1966) 383 U.S. 745 [16 L.Ed.2d 239, 86 S.Ct. 1170]; *Crandall* v. *Nevada* (1868) 73 U.S. (6 Wall.) 35 [18 L.Ed. 745]) open to the passage of all, but, just as fundamentally, was grounded in a notion of the Federal Union as a "national homeland" open to the residence of all.[5]

■ The provision at issue in the instant case, of course, does not seek to inhibit people from moving to California but, conversely, effectively *requires* nonsupporting fathers living outside the state to move into California to avoid additional criminal penalties. Such a provision embodies as invidious a discrimination against the exercise of constitutional rights as the statutes before the court, in *Shapiro,* however, for an individual's right to choose his place of domicile obviously affords him the right to select a home outside this state. Because the provision posits additional criminal liability on an individual *solely* because he chooses to remain outside the state, we find that the felony provision constitutes a denial of the equal protection of the laws and is therefore invalid.[6] "If a law has 'no other purpose . . . than to chill the assertion of constitutional rights by penalizing those who choose to exercise them, then it [is] patently unconstitutional.' *United States* v. *Jackson,* 390 U.S. 570, 581 (1968)." (*Shapiro*

---

[5]Justice Stewart, concurring in the *Shapiro* decision, declared that the constitutional right to travel, "of course, includes the right of 'entering and abiding in any State in the Union [citation] . . .' " (394 U.S. at p. 642 [22 L.Ed.2d at p. 619]) (see *Edwards* v. *California* (1941) 314 U.S. 160, 183 [86 L.Ed. 119, 130, 62 S.Ct. 164] (Jackson, J., concurring) ("This court should . . . hold squarely that it is a privilege of citizenship of the United States, protected from state abridgement, to enter any state of the Union, either for temporary sojourn or for the establishment of permanent residence therein and for gaining resultant citizenship thereof. If national citizenship means less than this, it means nothing."); *Corfield* v. *Coryell* (E.D.Pa. 1823) 6 F.Cas. 546, 552 ("The right of a citizen of one state to pass through, or to reside in any other state . . ."). (See also *In re Higgins* (1965) 46 Misc.2d 233 [259 N.Y.S.2d 874, 877-882].)

[6]The felony classification also appears constitutionally defective as violative of the privileges and immunities clause of article IV, section 2, of the federal Constitution, providing that "[t]he citizens of each State shall be entitled to all privileges and immunities of citizens in the several states," since the effect of section 270 will generally be to arbitrarily discriminate against non-California citizens. Although the classification is not drawn precisely along state citizenship lines, in practice the provision undoubtedly operates to penalize out-of-state citizens more heavily than California citizens, even though both have committed the same crime, and as such would appear to exhibit the very vice to which article IV, section 2, was addressed. (See *Toomer* v. *Witsell* (1948) 334 U.S. 385 [92 L.Ed. 1460, 68 S.Ct. 1157]; *Paul* v. *Virginia* (1869) 75 U.S. (8 Wall.) 168, 180 [19 L.Ed. 357, 360].)

The coincident application of the privileges and immunities clause and the constitutional right to travel in this case is not surprising, since several cases in the past have designated article IV, section 2, as one source of the constitutional right to travel. (See *Corfield* v. *Coryell* (E.D.Pa. 1823) 6 F.Cas. 546, 552; *Paul* v. *Virginia* (1869) 75 U.S. (8 Wall.) 168, 180 [19 L.Ed. 357, 360]; *Ward* v. *Maryland* (1871) 79 U.S. (12 Wall.) 418, 430 [20 L.Ed. 449, 452].)

v. *Thompson* (1969) 394 U.S. 618, 631 [22 L.Ed.2d 600, 613, 89 S.Ct. 1322].)[7]

We note that the statute which we examine in the instant case is *not* one which singles out, for greater punishment, nonsupporting fathers who *flee* from California with the intent to hinder the state's enforcement of support obligation or which focuses on those who "remain out of the state" for the *purpose* of evading California process and sanction. (Cf. 18 U.S.C. § 1073 (interstate flight with intent to avoid prosecution).) Section 270 does not purport to hinge its more severe felony sanction on an additional moral culpability which may conceivably be attributed to the conscious "evader"; instead it casts its felony net more widely and ensnares all those nonsupporting fathers who happen "to remain out of the state" for 30 days, whether the father was intentionally evading California process or not.[8]

■ The People suggest, however, that this court follow the lead of the Court of Appeal in *People* v. *Jones* (1967) 257 Cal.App.2d 235, 239 [64 Cal.Rptr. 622], and construe the felony provision as applying only "to a

---

[7]Inasmuch as section 270 serves to penalize the exercise of defendant's fundamental constitutional right to travel, its classification scheme could of course only be justified by a showing that the provision is "necessary to promote a *compelling* governmental interest." (*Shapiro* v. *Thompson*, 394 U.S. 618, 634 [22 L.Ed.2d 600, 615, 89 S.Ct. 1322]; cf. *Westbrook* v. *Mihaly* (1970) 2 Cal.3d 765, 784-785 [87 Cal.Rptr. 839, 471 P.2d 847].) Since we find that the basic objective of the felony provision—to induce nonsupporting fathers to come to California—is not a constitutionally legitimate one, we have no occasion to apply the compelling governmental interest test in the instant case.

Although the People claim that the objective served by the felony provision should be seen as the facilitation of the administration of support obligations, rather than as the movement of nonsupporting fathers to California, we believe analysis is only obscured by the proffer of this broader, though not unrelated, "governmental purpose." In the *Shapiro* case the states sought to justify the challenged residency requirement by a similar "generalized" purpose of "protecting the public fisc"; while the court conceded the propriety of this "fiscal responsibility" purpose, it held that the objective could not be achieved "by invidious distinctions between classes of its citizens." (394 U.S. at p. 633 [22 L.Ed.2d at p. 614].) In like manner, the state's interest in administering its support obligation law cannot be achieved by discriminating against that class who choose to remain outside the state. (Accord *Carrington* v. *Rash* (1965) 380 U.S. 89, 96 [13 L.Ed.2d 675, 680, 85 S.Ct. 775] ("The [constitutional right to vote] . . . means, at the least, that states may not casually deprive a class of individuals of the right to vote because of some remote administrative benefit to the state."); cf. *Bruton* v. *United States* (1968) 391 U.S. 123, 134-135 [20 L.Ed.2d 476, 484-485, 88 S.Ct. 1620].)

[8]Under the federal law proscribing interstate flight to avoid prosecution "the gravamen of the offense . . . is that the defendant fled a state with intent to avoid prosecution therein, *and mere absence from the state of prosecution . . . is not sufficient proof of the federal crime.*" (Italics added.) (*Barrow* v. *Owen* (5th Cir. 1937) 89 F.2d 476, 478; see also *Maenza* v. *United States* (5th Cir. 1957) 242 F.2d 339, 341; *Reis* v. *United States Marshal* (E.D.Pa. 1961) 192 F.Supp. 79, 81; *State* v. *Miller* (1966) 76 N.M. 62, 67 [412 P.2d 240, 243].)

resident father who *compounds* his offense of omission (nonsupport) with an action of commission, i.e., fleeing the state."[9] Although wherever a statute is reasonably susceptible of an interpretation consistent with the Constitution, the courts will give it such construction to preserve its constitutionality (*Simpson* v. *City of Los Angeles* (1953) 40 Cal.2d 271, 280 [253 P.2d 464]), we do not believe that the construction adopted in *Jones* can be reconciled with the explicit language of section 270. By its unequivocal terms, the felony provision of section 270 applies to every nonsupporting father "who remains out of the state" for 30 days; this language is too clear to permit us to construe it as intended to apply only to resident fathers who flee the state to evade their support obligations. If elimination of objectionable parts of a statute requires a wholesale rewriting, a court's attempt to do so transgresses both the legislative intent and the judicial function. (*Vogel* v. *County of Los Angeles* (1967) 68 Cal.2d 18, 25 [64 Cal.Rptr. 409, 434 P.2d 961]; *People* v. *Stevenson* (1962) 58 Cal.2d 794, 798 [26 Cal.Rptr. 297, 376 P.2d 297]; *City of Los Angeles* v. *Lewis* (1917) 175 Cal. 777, 781 [167 P. 390].)[10]

▇ Our conclusion that the felony provision of section 270 lacks constitutional viability does not affect the validity of the remainder of the statute. Having been independently enacted (Stats. 1939, ch. 1001, § 1, p. 2783) and bearing no necessary relationship to the balance of the statute, the felony provision may be severed. ▇ "[U]nconstitutional provisions will not vitiate the whole act, unless they enter so entirely into the scope and design of the law, that it would be impossible to maintain it without such obnoxious provisions." (*Danskin* v. *San Diego Unified School Dist.* (1946) 28 Cal.2d 536, 555 [171 P.2d 885]; *People* v. *Lewis* (1939) 13 Cal.2d 280, 284 [89 P.2d 388].) ▇ Inasmuch as petitioner's conviction of the felony necessarily included a finding of guilt as to misdemeanor non-

[9]The Attorney General argues that as thus construed the felony provision would be applicable to defendant since he "brought his family in California, had lived in California, and had left his family here in California while wilfully failing to support them." Defendant, however, neither left his family in California nor "fled" from California; he moved *with* his family to Rosarita Beach, Mexico, planning to reside therein, and only then left his family with inadequate support. Although the state argues that defendant should reasonably have known that his family would return to California for public assistance, and thus can be charged with leaving his family without support in California, there was still no showing that the avoidance of his support obligations was a dominant purpose of defendant's departure from the state (cf. *Hett* v. *United States* (9th Cir. 1965) 353 F.2d 761, 763, cert. den. 384 U.S. 905 [16 L.Ed.2d 358, 86 S.Ct. 1339]). In any event, since we conclude that the statute cannot be so construed, we need not resolve these contentions.

[10]Inasmuch as a criminal statute positing heavier penalties on those nonsupporting fathers who flee the state for the purpose of avoiding their obligations is not properly before us, we, of course, intimate no opinion on the constitutionality of such a statute.

support, our conclusion herein does not require that we set aside the conviction in its entirety.

The Superior Court of the County of San Diego is directed to correct its records in conformity with our decision herein to reflect that the offense of which petitioner was convicted in People v. Clennon Washington King, S.C. No. 9879, is a misdemeanor.

Wright, C.J., McComb, J., Peters, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

Respondent's petition for a rehearing was denied October 28, 1970.