[Civ. No. 46574. Second Dist., Div. One. Feb. 19, 1976.]

PAUL EBERLE et al., Plaintiffs and Respondents, v.
THE MUNICIPAL COURT FOR THE LOS ANGELES JUDICIAL
DISTRICT OF LOS ANGELES COUNTY,
Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Appellant.

**COUNSEL**

Burt Pines, City Attorney, Ward G. McConnell and Rand Schrader, Deputy City Attorneys, for Real Party in Interest and Appellant.

Fleishman, McDaniel, Brown & Weston and Stephen F. Rohde for Plaintiffs and Respondents.

Fred Okrand, Jill Jakes, Daniel C. Lavery, Mark D. Rosenbaum, Mary Ellen Gale and Neil M. Gould as Amici Curiae on behalf of Plaintiffs and Respondents.

No appearance for Defendant and Respondent.

## OPINION

## HANSON, J.—

### INTRODUCTION

This is an appeal from the judgment of the superior court granting a writ of prohibition preventing further proceedings in the Municipal Court of Los Angeles Judicial District against certain defendants charged with the publication of a criminal libel in violation of section 249 of the Penal Code.

### THE CASE

Defendants-petitioners-respondents Paul Eberle, Shirley Eberle and Mickey Leblovic (hereinafter referred to collectively as defendants) were charged by misdemeanor complaint (case No. 31-496273) with the publication of a criminal libel in violation of Penal Code section 249. The complaint charged that on or about October 15, 1974, the defendants did wilfully and unlawfully, "and with a malicious intent to injure another, publish and procure to be published a libel, expressed by a writing, printing and picture which tends to impeach the integrity, virtue and reputation of a living person, to wit: ANGIE DICKINSON, and thereby expose her to public hatred, contempt and ridicule."

Defendants' demurrer to the complaint was overruled. They thereupon sought a writ of prohibition from the superior court on grounds that the California criminal libel statutes under which they were charged were unconstitutional per se and as construed and applied by the complaint. More explicitly, defendants' contended that these laws violated their constitutional rights of freedom of speech and press, and the due process and equal protection provisions of the California Constitution (art. I, §§ 1, 9, 11, 13 and 21)[1] and the First and Fourteenth Amendments to the United States Constitution.

The parties conceded that Angie Dickson was at all relevant times a public figure.[2]

---

[1] Since November 5, 1974, the substance of these former sections is found in article I, sections 1, 2, 7 and 15, and article IV, section 16.

[2] Although the substance of the alleged libel has not been submitted to this court for consideration at this stage in the proceedings, we note that with respect to well known performers, such as the individual herein named, a broad range of material might be considered harmful or damaging to her professional career. (See, e.g., *Correia* v. *Santos*,

The superior court granted the writ of prohibition concluding that the entire scheme of the California libel statute, as embodied in Penal Code sections 248-257, was unconstitutional, relying primarily on the United States Supreme Court case of *Garrison* v. *Louisiana* (1964) 379 U.S. 64 [13 L.Ed.2d 125, 85 S.Ct. 209].)

## ISSUES

On appeal the People contend that California criminal libel statutes are not unconstitutional per se; that Penal Code section 249 can be isolated from other sections and preserved from unconstitutional contamination; and that this court should make a judicial interpretation of "malice" which would support constitutionality, just as California appellate courts have incorporated the constitutional definition of "malice" from *New York Times Co.* v. *Sullivan* (1964) 376 U.S. 254 [11 L.Ed.2d 686, 84 S.Ct. 710, 95 A.L.R.2d 1412] into civil cases.

## DISCUSSION

*Background:*

A paramount public interest which is protected by the First Amendment, applicable to the states through the Fourteenth Amendment to the United States Constitution, is to insure a free exchange of ideas and the discussion of public affairs.

In 1940 the United States Supreme Court in *Thornhill* v. *Alabama,* 310 U.S. 88 [84 L.Ed. 1093, 60 S.Ct. 736], said at page 101 [84 L.Ed. at page 1102]: "The freedom of speech and of the press guaranteed by the Constitution embraces at the least the liberty to discuss publicly and truthfully all matters of public concern without previous restraint or fear of subsequent punishment."

In 1945 the high court stressed that the First Amendment attempts to secure "the widest possible dissemination of information from diverse and antagonistic sources." (*Associated Press* v. *United States,* 326 U.S. 1, 20 [89 L.Ed. 2013, 2030, 65 S.Ct. 1416].)

In 1964 the United States Supreme Court addressed itself to freedom of speech and press, as guaranteed by the federal Constitution relative to

191 Cal.App.2d 844 [13 Cal.Rptr. 132].) While not a public official, she is clearly a notable and well known public figure, as the trial court and both parties concede.

the field of *civil libel,* in the landmark case of *New York Times Co.* v. *Sullivan, supra,* 376 U.S. 254. The high court reversed a judgment awarding damages for civil libel to L. B. Sullivan, one of the three elected commissioners of the City of Montgomery, Alabama, from the New York Times, a daily newspaper. Sullivan's complaint had alleged that he was libeled as a public figure and supervisor of the police department in his city by statements in a full-page advertisement that was carried by the newspaper. The jury was instructed that the Times could be held liable if it found that the paper had published the advertisement and made the statements "of and concerning" Sullivan; it was further instructed that "falsity and malice are presumed." The Supreme Court of Alabama sustained the trial judge's rulings and instructions in all respects.

The United States Supreme Court examined the constitutional issues in depth, and concluded that the rule of law applied by the Alabama courts was "constitutionally deficient for failure to provide the safeguards for freedom of speech and of the press that are required by the First and Fourteenth Amendments in a libel action brought by a public official against critics of his official conduct." (376 U.S. at pp. 264-265 [11 L.Ed.2d at p. 697].) As the court observed thereafter: "[W]e consider this case against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." (376 U.S. at p. 270 [11 L.Ed.2d at p. 701].)

The court determined that neither factual error nor defamatory content, either separately or in combination, suffices to remove the constitutional shield from criticism of official conduct. "The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, *with knowledge that it was false or with reckless disregard of whether it was false or not.*" (Italics added.) (376 U.S. at pp. 279-280 [11 L.Ed.2d at p. 706].) In effect, the court declared that it was unconscionably unfair to compel the critic of official conduct to be the guarantor of the truth of all his factual assertions. An allowance of the defense of truth, with the burden of proving it on the defendant, would be inhibitory not simply of falsehood but of other legitimate public comment.

In addition, the court struck down the presumption of "malice," which flowed from the mere fact of publication, as unconstitutional in principle. " 'The power to create presumptions is not a means of escape from constitutional restrictions,' [citation]; 'the showing of malice required for the forfeiture of the privilege is not presumed but is a matter for proof by the plaintiff . . . .' [citation]." (376 U.S. at p. 284 [11 L.Ed.2d at p. 709].)

Also in 1964, the same year as the *New York Times* case, the United States Supreme Court was called upon in the case of *Garrison* v. *Louisiana, supra,* 379 U.S. 64, to clarify the free speech and press guarantees relative to the field of *criminal libel.*

In *Garrison,* an appeal was taken by the District Attorney of Orleans Parish, Louisiana, from his conviction for criminal defamation under the Louisiana Criminal Defamation Statute.[3] The charges arose as a result of statements made by Garrison at a press conference and related to the conduct of the Criminal District Court judges in refusing to approve funds for Garrison's staff to investigate commercial vice on Bourbon and Canal Streets. The United States Supreme Court held that the *New York Times* rule limits state power to impose criminal (as well as civil) sanctions for criticism of the official conduct of public officials.

The court, among other things, rejected the limitation of the defense of truth in criminal libel to utterances published "with good motives and justifiable ends." By footnote, reference was made to a number of states, *including California,* which incorporate such a limitation. The court observed that where criticism is made of public officials and their

---

[3] This statute provides, in relevant part, as follows:

"La. Rev. Stat., 1950, Tit. 14:

'§ 47. Defamation

'Defamation is the *malicious publication* or expression in any manner, to anyone other than the party defamed, of anything which tends:

'(1) To expose any person to hatred, contempt, or ridicule, or to deprive him of the benefit of public confidence or social intercourse; or

'(2) To expose the memory of one deceased to hatred, contempt, or ridicule; or

'(3) To injure any person, corporation, or association of persons in his or their business or occupation.

'Whoever commits the crime of defamation shall be fined not more than three thousand dollars, or imprisoned for not more than one year, or both.

'§ 48. Presumption of malice

'Where a non-privileged defamatory publication or expression *is false* it is *presumed* to be malicious unless a justifiable motive for making it is shown.

'Where such a publication or expression is *true,* actual malice must be proved in order to convict the offender.' " (Italics added.) (*Garrison* v. *Louisiana, supra,* 379 U.S. at p. 65, fn. 1 [13 L.Ed.2d at p. 127].)

conduct of business, the interest in private reputation is overborne by the larger constitutionally protected public interest in dissemination of the truth. Even where the utterance is false, constitutional freedoms are primary and preclude attaching adverse consequences to any except the knowing or reckless falsehood. Thus the court concluded (379 U.S. at p. 74 [13 L.Ed.2d at p. 133]) that "only those false statements made with the high degree of awareness of their probable falsity demanded by *New York Times* may be the subject of either civil or criminal sanctions."

The *New York Times* rule absolutely prohibits punishment of truthful criticism. The court noted that the Louisiana statute imposed punishment for true statements made with "actual malice" and the decisions defined that term as " 'hatred, ill will or enmity or a wanton desire to injure.' " (379 U.S. at p. 78 [13 L.Ed.2d at p. 135].) It also punished false statements made with ill will or if not made with a reasonable belief in truth. A reasonable belief was defined as that which " 'an ordinarily prudent man might be able to assign a just and fair reason for.' " (379 U.S. at p. 79 [13 L.Ed.2d at p. 135].) The vice in that definition, the court pointed out, was that it permitted punishment for mere negligence or want of ordinary care, while the test laid down in *New York Times* was conditioned on reckless disregard of truth.

The criminal libel statutes of the various states were historically justified in theory as means to prevent breaches of the peace by defamed and outraged citizens. The United States Supreme Court in *Garrison* observed that today this constitutes a doubtful rationale.[4] ■ Thus, statutes dealing with criminal libel are required to be narrowly drawn to reach speech calculated to evoke a clear and present danger of public or social disorder.

*The Case at Bench:*

The California criminal libel statutes were enacted over 100 years ago (1872) and apparently were infrequently employed, as evidenced by the paucity of cases listed in the annotated code. These statutes are found in "Chapter 10, Libel" (Pen. Code, §§ 248-257).

---

[4] " 'Usually we reserve the criminal law for harmful behavior which exceptionally disturbs the community's sense of security. . . . It seems evident that personal calumny falls in neither of these classes in the U.S.A., that it is therefor inappropriate for penal control, and that this probably accounts for the paucity of prosecutions and the near desuetude of private criminal libel legislation in this country. . . .' Model Penal Code, Tent. Draft No. 13, 1961, § 250.7, Comments at 44." (*Garrison* v. *Louisiana, supra,* 379 U.S. at p. 70 [13 L.Ed.2d at p. 130].)

■   Although in the instant case the prosecution was instituted under Penal Code section 249, the charge incorporates, significantly we believe, language from section 248 (defining "libel"); section 250 (prescribing when "malice" is presumed); and section 251 (pertaining to "truth" as a defense). We quote verbatim the four above-referred to sections.

"§ 248. A libel is a malicious defamation, expressed either by writing, printing or by signs or pictures, or the like, tending to blacken the memory of one who is dead, or to impeach the honesty, integrity, virtue, or reputation, or publish the natural or alleged defects of one who is alive, and thereby to expose him to public hatred, contempt, or ridicule.

"§ 249. Every person who willfully and with a malicious intent to injure another, publishes or procures to be published any libel, is punishable by fine not exceeding five thousand dollars, or imprisonment in the county jail not exceeding one year.

"§ 250. An injurious publication is presumed to have been malicious if no justifiable motive for making it is shown.

"§ 251. In all criminal prosecutions for libel, the truth may be given in evidence to the jury, and if it appears to the jury that the matter charged as libelous is true, and was published with good motives and for justifiable ends, the party shall be acquitted. The jury have the right to determine the law and the fact."

The word "malicious" appears in sections 248, 249 and 250 and is incorporated in the word "libel" appearing in section 251. Penal Code section 7, subdivision 4 states the significance to be attached to the words "malice" and "maliciously" appearing in the Penal Code is to "import a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law."

■   Although, as previously noted, the complaint in the instant case charges violation of section 249, we necessarily must consider other salient sections of the California statute, specifically sections 248, 250 and 251, because an unconstitutional enactment will be upheld in part only if it can be said that that part is complete in itself and would have been adopted by the Legislature had the latter foreseen the partial invalidation of the statute. It cannot be upheld where the void provisions taint the remainder, and where it cannot be said that the Legislature would

have adopted the remainder had it foreseen the partial invalidation. (See *People* v. *Navarro,* 7 Cal.3d 248, 260 [102 Cal.Rptr. 137, 497 P.2d 481]; *O'Kane* v. *Catuira,* 212 Cal.App.2d 131, 141 [27 Cal.Rptr. 818, 94 A.L.R.2d 487].) ■ Moreover, statutes which restrict the exercise of First Amendment rights must be drawn with a narrow specificity and cannot be construed on a piecemeal basis. (See *In re Berry,* 68 Cal.2d 137, 155-157 [65 Cal.Rptr. 273, 436 P.2d 273].)

■ Applying the constitutional guidelines enunciated by the United States Supreme Court in the *New York Times* and *Garrison* cases and acknowledging the limitations on partial validation or invalidation of statutes, we conclude, as did the court below, as follows:

■ I. That section 250 is unconstitutional because the presumption of "malice" contained therein constitutes one of the elements of the crime and is not constitutionally permissible. (See *New York Times Co.* v. *Sullivan, supra,* 376 U.S. 254; *Speiser* v. *Randall* (1958) 357 U.S. 513 [2 L.Ed.2d 1460, 78 S.Ct. 1332].)

■ II. That section 251 is unconstitutional because it places the limitations upon the defense of truthfulness to publications "with good motives and for justifiable ends." First Amendment principles require, with regard to publications involving public officials or public figures, that state criminal libel statutes guarantee that truth shall be a complete defense and that even where a publication is false, there may be no conviction for criminal libel except upon proof that the publication was made with knowledge of falsity or disregard of the truth or falsity. (See *Garrison* v. *Louisiana, supra,* 379 U.S. 64.)

■ III. Section 248 defines "libel" as a "malicious defamation," and section 249 imposes a penalty for the publication of a "libel" with a "malicious" intent to injure another. These two sections (248 and 249) cannot meet the test of constitutionality, standing alone, as the principal supports of the California criminal libel scheme because (a) Penal Code section 7, subdivision 4 defines "malice" for purposes of these statutes as "a wish to vex, annoy, or injure another person, or an intent to do a wrongful act," which is prohibited by the *Garrison* and *New York Times* rule holding that it is the intent to injure another through falsehood which is constitutional; and (b) once sections 250 and 251 are deleted, there are no guidelines whatsoever to assist the interpretation of the statute in respect to truth or falsity.

Although *Garrison* does not appear to eliminate absolutely criminal libel legislation but merely declares the need for appropriate restraints on such legislation, not every unconstitutional statute can be saved by judicial construction where dangerous ambiguities would remain by deletion of specific salient sections.

The excision of the objectionable portions of the California criminal libel statutes as mandated by *New York Times* and *Garrison*, as hereinbefore discussed, requires a wholesale rewriting, and any attempt at draftsmanship on our part would transgress both the legislative intent and the judicial function. It would constitute a flagrant breach of the doctrine of separation of powers. (See *In re King*, 3 Cal.3d 226, 237 [90 Cal.Rptr. 15, 474 P.2d 983].) This we refuse to do.

The judgment of the superior court granting the writ of prohibition is affirmed.

Wood, P. J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 15, 1976. Mosk, J., was of the opinion that the petition should be granted.