[No. AO20777. First Dist., Div. Three. Sept. 26, 1983.]

ROQUE I. VELASCO, Petitioner, v.
THE MUNICIPAL COURT FOR THE SAN FRANCISCO JUDICIAL
DISTRICT OF THE CITY AND COUNTY OF SAN FRANCISCO,
Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Jeff Brown, Public Defender, Peter G. Keane, Chief Attorney, Peter Ottenweller and Grace Lidia Suarez, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

John K. Van de Kamp, Attorney General, Daniel J. Kremer, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Ann K. Jensen, Herbert F. Wilkinson and Morris Lenk, Deputy Attorneys General, for Real Party in Interest.

## OPINION

**FEINBERG, J.**—Under scrutiny again is Penal Code section 650½, a venerable misdemeanor statute, part of which has been "said to be purposely vague." (*In re Davis* (1966) 242 Cal.App.2d 645, 664 [51 Cal.Rptr. 702].) The issue before us is whether other portions of the statute, which proscribe wrongful use of another's name for a lewd or licentious purpose or to affect another's reputation, are also unconstitutionally vague or overbroad. We conclude that they are and that the trial court erred in overruling petitioner's demurrer.

Petitioner was initially charged with two counts of criminal libel in violation of Penal Code section 248. His demurrer was sustained on the ground that section 248 had been found unconstitutional (*Eberle* v. *Municipal Court* (1976) 55 Cal.App.3d 423 [127 Cal.Rptr. 594]). The complaint was then amended to charge two counts of "wilfully and wrongfully and for accomplishing a lewd and licentious purpose" using the name of another "in a manner that had a tendency to affect her [his] moral reputation in the estimation of the person or persons to whom it was used" in violation of Penal Code section 650½.

Petitioner demurred to both counts. His demurrer was overruled by the municipal court. He then petitioned the superior court for a writ of mandate. When that petition was denied, he petitioned this court. We issued an alternative writ of mandate.

Penal Code section 650½ is a complex statute, covering several diverse subjects. Although only two portions of the section are involved here, we will quote it in its entirety. For ease of reference in this opinion, we have subdivided the statute, adding numbers not present in the statute. Our numbering will appear in brackets.

Penal Code section 650½: "A person who wilfully and wrongfully commits any act [1] which seriously injures the person or property of another or [2] which seriously disturbs or endangers the public peace or health, or [3] which openly outrages public decency, or [4] who wilfully and wrongfully in any manner, verbal or written, uses another's name for accomplish-

ing lewd or licentious purposes, whether such purposes are accomplished or not, or [5] who wilfully and wrongfully uses another's name in any manner that will affect, or have a tendency to affect the moral reputation of the person whose name is used, generally, or in the estimation of the person or persons to whom it is so used, or [6] who with intent of accomplishing any lewd or licentious purpose, whether such purpose is accomplished or not, personifies any person other than himself, or [7] who causes or procures any other person or persons to identify him, or to give assurance that he is any other person than himself to aid or assist him to accomplish any lewd or licentious purpose, for which no other punishment is expressly prescribed by this code, is guilty of a misdemeanor."

As can be seen, the charges against petitioner are stated in a form which amalgamates [4] and [5]. He is charged with using the names of others for accomplishing a lewd and licentious purpose in a manner having a tendency to affect the moral reputations of the victims.

Petitioner contends that the phrase "uses another's name" is vague because it could mean either impersonates another or mentions another's name in communication. He notes that the terms "lewd and licentious" are similar to the phrase "lewd and dissolute" which the California Supreme Court has construed in *Pryor* v. *Municipal Court* (1979) 25 Cal.3d 238 [158 Cal.Rptr. 330, 599 P.2d 636] to prohibit only "the solicitation or commission of conduct in a public place or one open to the public or exposed to public view, which involves the touching of the genitals, buttocks or female breast, for purposes of sexual arousal . . . by a person who knows or should know of the presence of persons who may be offended." He argues that there is no reasonable way to inject that definition into Penal Code section 650½. Petitioner further argues that the term "moral reputation" has no fixed meaning among persons of common intelligence and asserts that the statute cannot make criminality depend upon the estimation of the person receiving the communication, whose private views of morality cannot be known by the potential criminal.

The Attorney General concedes that the complaint should be amended to allege a tendency to affect the victims' moral reputations generally, instead of in the estimation of the person or persons to whom the victims' names were used. However he disputes petitioner's other claims, arguing that "uses" and "moral reputation" are easily understood terms and that "lewd and licentious" may be given the same construction as used by the *Pryor* court for "lewd and dissolute."

In *In re Davis* (1966) 242 Cal.App.2d 645 [51 Cal.Rptr. 702], the court held that the portion of Penal Code section 650½ which proscribed per-

forming any act "which openly outrages public decency" (subd. [3]) was void for vagueness. The *Davis* court applied the "classic formulation of the test for unconstitutional vagueness" stated in *Connally* v. *General Constr. Co.* (1926) 269 U.S. 385, 391 [70 L.Ed. 322, 328, 46 S.Ct. 126], as follows: "That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law."

In *Ghafari* v. *Municipal Court* (1978) 87 Cal.App.3d 255, 263 [150 Cal.Rptr. 813, 2 A.L.R.4th 1230], a case involving wearing masks in public to conceal identity (Pen. Code, § 650a), this division elaborated upon the test of *Connally*:

"Vague statutes offend several important values, as explained by the United States and California Supreme Courts: ' "First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know *what* is prohibited, so that he may act accordingly. . . . Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit *standards* for those who apply them. . . . Third, . . . where a vague statute 'abut[s] upon sensitive areas of basic First Amendment freedoms' . . . [u]ncertain meanings inevitably lead citizens to 'steer far wider of the unlawful zone.' . . . than if the boundaries of the forbidden areas were clearly marked." ' (*Braxton* v. *Municipal Court* (1973) 10 Cal.3d 138, 151 [109 Cal.Rptr. 897, 514 P.2d 697], quoting *Grayned* v. *City of Rockford* (1972) 408 U.S. 104 at pp. 108-109 [33 L.Ed.2d 222, 227-228, 92 S.Ct. 2294].)"

█ "While the basic standard against which statutes must be measured for vagueness is a constant, the vigor with which that standard is applied varies with the determination whether a constitutionally protected right is involved." (*People* v. *Barksdale* (1972) 8 Cal.3d 320, 327 [105 Cal.Rptr. 1, 503 P.2d 257].) ". . . [S]tandards of permissible statutory vagueness are strict in the area of free expression." (*N.A.A.C.P.* v. *Button* (1963) 371 U.S. 415, 432 [9 L.Ed.2d 405, 417, 83 S.Ct. 328].) "Where regulations of the liberty of free discussion are concerned, there are special reasons for observing the rule that it is the statute, and not the accusation or the evidence under it, which prescribes the limits of permissible conduct and warns against transgression." (*Thornhill* v. *Alabama* (1940) 310 U.S. 88, 98 [84

L.Ed. 1093, 1100, 60 S.Ct. 736]. See *Bloom* v. *Municipal Court* (1976) 16 Cal.3d 71, 90 [127 Cal.Rptr. 317, 545 P.2d 229], Tobriner, J. dis.)

*"Uses another's name" in subdivisions [4] and [5].*

Petitioner suggests three possible meanings for the phrase "uses another's name" in subdivisions [4] and [5]: (1) impersonates another, (2) mentions a person's name in correspondence, and (3) libels a person. He does not explain the distinction between (2) and (3). The Attorney General argues that "uses another's name" does not mean "impersonates another" because it would be redundant to prohibit impersonation in two different places in the same statute.

To put it kindly, Penal Code section 650½ is not a model of clarity. Close examination of the three of its seven provisions relevant here raises more questions than it answers. The three provisions provide that a person: [4] who wilfully and wrongfully in any manner, verbal or written, uses another's name for accomplishing lewd or licentious purposes, whether such purposes are accomplished or not; [5] who wilfully and wrongfully uses another's name in any manner that will affect, or have a tendency to affect the moral reputation of the person whose name is used, generally, or in the estimation of the person or persons to whom it is used; [6] who with intent of accomplishing any lewd or licentious purpose, whether such purpose is accomplished or not, personifies any person other than himself.

Subdivisions [4] and [6] both address accomplishing a lewd or licentious purpose, making it illegal both to personify any person or to use another's name verbally or in writing to carry out that purpose. Thus, for purposes of achieving a lewd or licentious purpose, it is clear that "uses another's name" in [4] does not mean "personifies" another. Such a redundancy could not have been intended.

But what about [5]? It employs the phrase "uses another's name in any manner" without the qualification that the use be "verbal or written." [5], unlike [4], has no complementary provision making it unlawful to *personify* another in order to affect the person's moral reputation. Does this indicate that in subdivision [5] "uses another's name in any manner" includes personification of another? It would not be redundant to give such a broader interpretation to "uses another's name in any manner" in subdivision [5]. Or did the Legislature intend that it should not be illegal to personify another in order to affect his or her moral reputation so long as no lewd or licentious purpose also existed?

Persons of common intelligence must wonder exactly what the Legislature intended to prohibit in subdivision [5] of Penal Code section 650½. The

manner in which the prosecution charged the crime suggests that even attorneys trained and practiced in interpreting penal statutes find it difficult to read this portion of section 650½. Subdivisions [4] and [5] are structured to proscribe two distinct kinds of conduct. But the charging document melds those two subdivisions into one, failing to specify whether petitioner's use of the victims' names was verbal or in writing. The Attorney General's briefs in this court discuss the statute as if subdivisions [4] and [5] do not proscribe two distinct kinds of conduct.

The difficulty in discerning the meaning of Penal Code section 650½ is heightened by its penultimate phrase: "for which no other punishment is expressly prescribed by this code." At the time section 650½ was enacted (Stats. 1903, ch. 201, § 1, p. 235) the Penal Code contained a viable libel law, prohibiting written defamation tending to impeach the reputation of another (Pen. Code, § 248, enacted in 1872). The slander law was added later, in 1929 (Stats. 1929, ch. 682, § 1, p. 1174). In light of the existing libel law, was the phrase "uses another's name in any manner" in subdivision [5] of section 650½ intended to have the limited meaning suggested by the Attorney General? If interpreted to apply only to oral or written mention of another's name to affect his or her moral reputation, it would duplicate libel law as to written communication. Did the Legislature intend to proscribe only slandering the moral reputation of another, or did it also cover personifying another to injure the victim's reputation? Persons seeking to conform their conduct with the law are forced to guess at the meaning of subdivision [5] of Penal Code section 650½.

*"Moral reputation" in subdivision [5].*

Were this the only problem with [5], we might attempt an interpretation to resolve the ambiguity. But even more telling is the vagueness inherent in the phrase "uses another's name in any manner that will affect, or have a tendency to affect the moral reputation. . . . What does "moral reputation" mean? Consider a letter written by A to B in which C is referred to "as a person of easy virtue who bestows sexual favors lightly and freely in a perverse fashion." We would suppose that such a characterization, even in these days, would have a "tendency to affect" C's moral reputation. Can the Legislature have intended to make the writing of such a letter a *crime*?

In *In re Davis, supra,* 242 Cal.App.2d 645, under review was [3], proscribing the doing of an act which "openly outrages public decency." As we have noted, the court in *Davis* held the above-quoted language void for vagueness. It appears to us that the language of [5] is even more subject to the infirmity of vagueness than is the language in [3].

Finally, in this context, [5] is, in this case, being used in effect, as a criminal libel statute without any First Amendment safeguards, not even those found constitutionally *inadequate* in *Eberle* v. *Municipal Court, supra,* 55 Cal.App.3d 423, as we shall explicate in somewhat more detail below. We do not even pause to dwell upon the threat to free speech in proscribing language that has a "*tendency* to affect."

*"Lewd or licentious" in subdivision [4].*

■ " 'All presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity. Statutes must be upheld unless their unconstitutionality clearly, positively and unmistakably appears.' " (*In re Davis, supra,* 242 Cal.App.2d 645, 651.)

"The judiciary bears an obligation to 'construe enactments to give specific content to terms that might otherwise be unconstitutionally vague.' [Citation.] Thus we have declared that 'A statute will not be held void for uncertainty if any reasonable and practical construction can be given its language.' [Citation.] If by fair and reasonable interpretation we can construe [the statute] to sustain its validity, we must adopt such interpretation . . . ." (*Pryor* v. *Municipal Court, supra,* 25 Cal.3d 238, 253.)

The Attorney General argues that the meaning given by the *Pryor* court to save "lewd or dissolute" in Penal Code section 647, subdivision (a), should be given to "lewd or licentious" in subdivision [4] of Penal Code section 650½. He does not explain exactly how one can use a person's name orally or in writing to accomplish the purpose of causing "the touching of the genitals, buttocks or female breast, for purposes of sexual arousal . . ." Apparently, however, he contends that a violation of Penal Code section 650½ would occur if a person's name were used "in connection with" such conduct. It is not clear whether it would be enough for the name to be used in speech or writing which *describes* "lewd or licentious" conduct or whether the use of the words must actually accompany performance of acts such as those described in *Pryor*.

The imprecision in the Attorney General's argument is understandable. As observed by the *Pryor* court the definition of a lewd act without a communicative component is not interchangeable with the definition of a lewd communication. Because of First Amendment considerations, a communication which *described* acts committed in violation of Penal Code section 647, subdivision (a), as interpreted by *Pryor,* would not be criminal merely because it described those acts. Unless it fell within certain limited exceptions, it would be protected expression.

The classes of speech which may legitimately be restrained by government were discussed by the United States Supreme Court in *Chaplinsky* v. *New Hampshire* (1942) 315 U.S. 568, 571-572 [86 L.Ed. 1031, 1035, 62 S.Ct. 766]: "[t]here are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to the truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality. 'Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument.' "

In order to sustain subdivision [4] of Penal Code section 650½ against a challenge of unconstitutional overbreadth, it is necessary to go beyond the *Pryor* definition of "lewd or dissolute." A communication which uses another's name for accomplishing a lewd or licentious purpose must be more than a communication connecting the person's name with offensive touchings. It must also be either defamatory or obscene. Otherwise, Penal Code section 650½ could be used to prosecute one who wrote a truthful account of great social and literary worth which described offensive touching by a public official.

In order to sustain the constitutionality of subdivision [4] of Penal Code section 650½, which proscribes only wrongful use of another's name to accomplish a lewd or licentious purpose we would be required to interpret it to apply only to communications which either (1) are used to accomplish lewd acts as defined by the *Pryor* court, or (2) are themselves obscene (including obscene defamations).

*Should we construe the statute to save it?*

We would be compelled to interpret subdivision [4] in the manner suggested above in order to save it if a legitimate function for the subdivision could be discerned. We might even be required to attempt a construction of subdivision [5] to remove its ambiguities if it would then be of some use.[1] However, because Penal Code section 650½ does not apply where "other

---

[1]We note a conspicuous absence of published opinions mentioning these two provisions of Penal Code section 650½. Though they have been "on the books" since 1903, it would appear that despite their sweeping form, they are little used.

punishment is expressly prescribed by this code" these subdivisions would be of little service if construed so as to pass constitutional muster.

Construction of subdivision [4] to remove ambiguity and to conform to First Amendment standards would be unproductive. As explained above, we would be required to construe that subdivision as prohibiting only communications which are used to accomplish lewd acts or communications which are themselves obscene. If a writing or speech is obscene, it is covered by Penal Code section 311 and a body of obscenity law interpreting that section. By its own terms, Penal Code section 650½ would not apply because punishment was prescribed elsewhere in the code.

Under our construction, subdivision [4] would then proscribe only use of a person's name for purposes of committing lewd or licentious acts, as defined by *Pryor*.[2] However, Penal Code section 647, subdivision (a), interpreted by *Pryor,* already prescribes a punishment for any person "[w]ho solicits anyone to engage in or who engages in lewd or dissolute conduct in any public place or in any place open to the public or exposed to public view." Because of the coverage of that section, subdivision [4] of Penal Code section 650½ would have little, if any, function.

Construction of subdivision [5] would be even less productive. If we were to construe subdivision [5] to remove its ambiguity, we would conclude that it prohibited only *communications* which used another's name to affect the person's moral reputation (not personifications for that purpose). It would then overlap defamation law, which makes it illegal to orally or in writing defame a person by impeaching his or her "honesty, integrity, virtue, or reputation" (Pen. Code, §§ 248 and 258.) Because of the penultimate phrase of Penal Code section 650½, subdivision [5], as a limited form of defamation law, would have no application at all.

The Attorney General makes two points in arguing against our suggestion that subdivision [5] as construed would have no function: (1) he notes that because of *Eberle* v. *Municipal Court* (1976) 55 Cal.App.3d 423 [127 Cal.Rptr. 594], libel law may no longer be enforced, and (2) he argues that there are ways of harming a person's reputation which are not punishable as defamation.

*Eberle* v. *Municipal Court, supra,* 55 Cal.App.3d 423, addressed the facial validity of the criminal libel laws in light of First Amendment considerations. The statutes in question provide:

---

[2]We confess that we lack the imagination to predict how a defendant might use the name of another in a communication used to accomplish an offensive touching under the *Pryor* construction. But that may be only our failing, putative defendants might have proven to be more imaginative than we.

"§ 248. A libel is a malicious defamation, expressed either by writing, printing, or by signs or pictures, or the like, tending to blacken the memory of one who is dead, or to impeach the honesty, integrity, virtue, or reputation, or publish the natural or alleged defects of one who is alive, and thereby to expose him to public hatred, contempt, or ridicule.

"§ 249. Every person who willfully, and with a malicious intent to injure another, publishes or procures to be published any libel, is punishable by fine not exceeding five thousand dollars, or imprisonment in the county jail not exceeding one year.

"§ 250. An injurious publication is presumed to have been malicious if no justifiable motive for making it is shown.

"§ 251. In all criminal prosecutions for libel, the truth may be given in evidence to the jury, and if it appears to the jury that the matter charged as libelous is true, and was published with good motives and for justifiable ends, the party shall be acquitted. The jury have the right to determine the law and the fact."

The word "malicious" appears in sections 248, 249 and 250 and is incorporated in the word "libel" appearing in section 251. Penal Code section 7, subdivision 4 states the significance to be attached to the words "malice" and "maliciously" appearing in the Penal Code is to "import a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law."

The *Eberle* court held Penal Code section 250 invalid because its presumption of malice was not constitutionally permissible and found Penal Code section 251 unconstitutional because it placed a limitation upon the defense of truthfulness to publications "with good motives and for justifiable ends." The *Eberle* court found that sections 248 and 249 could not meet the constitutional test, standing alone, because the definition of malice supplied by Penal Code section 7, subdivision 4, was inadequate and without sections 250 and 251 there were no guidelines to assist the interpretation of the statute in respect to truth or falsity.

The *Eberle* court considered saving the libel law by judicial construction, but rejected the idea, stating: "Although *Garrison* does not appear to eliminate absolutely criminal libel legislation but merely declares the need for appropriate restraints on such legislation, not every unconstitutional statute can be saved by judicial construction where dangerous ambiguities would remain by deletion of specific salient sections. [¶] The excision of the objectionable portions of the California criminal libel statutes as mandated by

*New York Times* and *Garrison,* as hereinbefore discussed, requires a wholesale rewriting, and any attempt at draftsmanship on our part would transgress both the legislative intent and the judicial function. It would constitute a flagrant breach of the doctrine of separation of powers. (See *In re King,* 3 Cal.3d 226, 237 [90 Cal.Rptr. 15, 474 P.2d 983] [cert. den. 403 U.S. 931 (29 L.Ed.2d 709, 91 S.Ct. 2249)].) This we refuse to do."

The Attorney General argues that because *Eberle* has found libel law unconstitutional (and similarly offensive sections accompany the slander law—see Pen. Code, §§ 258-260), there is no punishment prescribed by the code for libel, other than Penal Code section 650½. In essence, he argues that to the extent there was overlap between defamation law and section 650½, the latter section has filled the breach left by *Eberle.*

*Assuming Penal Code section 650½ were intended to fill the breach left by Eberle,* as presently written it would suffer from the same deficiencies as the excised defamation law. It would not provide for the defense of truth or contain an adequate definition of malice. If the *Eberle* court could not *save* the libel law by judicial construction, it follows a fortiori that this court cannot *create* a constitutionally adequate defamation law out of a section not originally intended to apply to defamation.

The Attorney General suggests that the Legislature may have declined to replace the libel law because it considered section 650½ an adequate substitute. No reasonable reading of *Eberle* could have led the Legislature to that conclusion. The clear import of *Eberle* was that if the Legislature wished to prohibit libel it was required to draft a law that satisfied the constitutional standards set by *Garrison* and *New York Times.* No reasonable legislator could have read *Eberle* and concluded that Penal Code section 650½ contained the safeguards that *Eberle* found lacking in the libel law after its excision. The Legislature's inaction suggests an intention to decriminalize defamation, not to rely upon section 650½ to fill the breach.

As mentioned above, the Attorney General also argues that subdivision [5] of section 650½ has some vitality because it proscribes some uses of another's name which do not come within defamation law. As an example, he notes that Penal Code section 258 exempts from the definition of slander words uttered in the proper discharge of an official duty, or in any legislative or judicial proceedings, or in any other official proceeding authorized by law.

The defect in this argument is that it ignores the First Amendment protection for expression. If the use of another's name to injure his reputation is not defamatory (or obscene, or fighting words, etc.) it is protected speech.

Thus, an exemption from the defamation laws does not justify prosecution under section 650½, subdivision [5]. Between the First Amendment and defamation law, there is no room for application of subdivision [5] to communications which use another's name to affect the person's moral reputation. If the sole basis for the prosecution is communication of another's name to affect his or her reputation, either it is defamatory and therefore not within the intention of Penal Code section 650½ or it is protected by the First Amendment. Construction of subdivision [5] to remove its ambiguity would leave a statute with no function.

■ In summary, subdivisions [4] and [5] of Penal Code section 650½, when construed to avoid ambiguities and to operate in areas permitted by the First Amendment, merely overlap defamation and obscenity laws and Penal Code section 647, subdivision (a). By its own terms, section 650½ does not apply where "other punishment is expressly prescribed by this code." Thus, there is no point to construing the statute to avoid ambiguities.[3] We hold that subdivisions [4] and [5] are void for vagueness and overbreadth. The San Francisco Municipal Court erred in overruling petitioner's demurrer.

Let a peremptory writ of mandate issue directing the San Francisco Municipal Court to set aside its order overruling petitioner's demurrer and to enter a new order sustaining the demurrer.

White, P. J., and Barry-Deal, J., concurred.

---

[3]We recognize our obligation to effect some reasonable interpretation that will save these provisions from being struck down as unconstitutional. But because we cannot discern the legislative will, any gloss we might put upon the statutory language would reflect only *our* view of what the law should be. Such a posture on our part would be more than an act of supererogation, it would be a usurpation of the legislative function.