Filed 3/27/23

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| CULTIVA LA SALUD et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> STATE OF CALIFORNIA et al., <br><br> Defendants and Appellants. | C095486 <br><br> (Super. Ct. No. 34-2020-80003458-CU-WM-GDS) |

APPEAL from a judgment of the Superior Court of Sacramento County, Shelleyanne W.L. Chang, Judge.  Affirmed.

Rob Bonta, Attorney General, Tamar Pachter, Senior Assistant Attorney General, Molly K. Mosley, Craig D. Rust, Robert E. Asperger and Lauren E. Freeman, Deputy Attorneys General, for Defendants and Appellants.

Nielsen Merksamer Parrinello Gross & Leoni and Christopher E. Skinnell for California Chamber of Commerce, California Grocers Association, California Retailers Association, Consumer Brands Association and American Beverage Association as Amici Curiae on behalf of Defendants and Appellants.

Jarvis Fay, Benjamin P. Fay, Edward K. Low, and Carolyn Liu for Plaintiffs and Respondents.

Darien Shanske for Law Professors as Amicus Curiae on behalf of Plaintiffs and Respondents.

Public Good Law Center, Thomas Bennigson and Seth E. Mermin for American Heart Association, California Dental Association, Center for Public Health Law Research, Center for Science in the Public Interest, Changelab Solutions, Georgetown Project on State & Local Government Policy & Law, Healthy Food America, National Alliance for Hispanic Health, Network for Public Health Law, Praxis Project, Public Health Advocates, Public Health Institute, Public Health Law Center and Public Health Law Watch as Amici Curiae on behalf of Plaintiffs and Respondents.

Colantuono, Highsmith & Whatley, Michael G. Colantuono and Abigail A. Mendez for League of California Cities and California State Association of Counties as Amici Curiae on behalf of Plaintiffs and Respondents.

Over 100 years ago, California voters approved a constitutional provision authorizing charter cities to make their own laws for "municipal affairs" and restricting the power of the state Legislature to override these laws. Voters enacted this provision, now known as the "home rule" provision, on the understanding that charter cities knew their own local needs better than the state. As presently written in article XI, section 5 of the California Constitution, the home rule doctrine allows charter cities to "make and enforce all ordinances and regulations in respect to municipal affairs" and makes these laws supreme over "all laws inconsistent therewith." This doctrine grants charter cities broad authority to enact laws governing local matters, including the power to tax for local purposes.

In 2018, the Legislature passed a law—titled the "Keep Groceries Affordable Act of 2018" (the Groceries Act) (Rev. & Tax. Code, §§ 7284.8-7284.16)[1]—that sought to limit charter cities' authority under the home rule doctrine. The act generally prohibits charter cities, counties, and other local governments from imposing taxes, fees, or

_____

[1] Undesignated statutory references are to the Revenue and Taxation Code.

2

assessments on certain grocery items, including, most relevant here, on sodas and other sugar-sweetened drinks. The act also imposes a penalty—the loss of all revenue from sales and use taxes—for violations of its terms. But it imposes its penalty only on charter cities and only if the city's "tax, fee, or other assessment is a valid exercise of [the] city's authority under Section 5 of Article XI of the California Constitution with respect to the municipal affairs of that city." (§ 7284.12, subd. (f).)

Following the Groceries Act's passage, a nonprofit health advocacy organization and a city council member appearing in her individual capacity filed suit to challenge the act's penalty provision. They argued the provision wrongly serves to penalize charter cities that lawfully exercise their constitutional rights under the home rule doctrine. In their view, the Legislature probably understood that the home rule doctrine prevented the state from banning charter cities from taxing sugar-sweetened drinks; and so, as a workaround, the Legislature created the act's penalty provision to discourage charter cities from validly exercising their right to tax these drinks under the home rule doctrine. The trial court, interpreting the law similarly, ultimately agreed the Groceries Act's penalty provision is unlawful and deemed it unenforceable.

On appeal, the State of California, the California Department of Tax and Fee Administration, and the department's director (collectively, the Department) challenge the trial court's decision for two reasons. First, the Department contends the Groceries Act's penalty provision does not, as it states, penalize a charter city only when its tax on groceries "is a valid exercise" of the city's constitutional powers. (§ 7284.12, subd. (f).) It instead, the Department argues, penalizes a charter city only when its tax on groceries "would *otherwise* be a valid exercise of [the] city's constitutional authority, if not for the Groceries Act." Second, even if the trial court properly construed the act's penalty provision, the Department contends the trial court should have severed certain words from the penalty provision rather than deem the provision unenforceable in its entirety. We affirm.

3

BACKGROUND

I

*The Passage of the Groceries Act*

In 2014 and 2016, four California cities adopted taxes on the distribution of sodas and other sugar-sweetened drinks.  Berkeley was the first.  In 2014, the Berkeley electorate approved a ballot measure to tax the distributors of "sugar-sweetened beverages."  Under the measure's findings, the people of Berkeley declared that high levels of consumption of these beverages "has had tragic impacts on community health," playing a role in increased childhood obesity, increased diabetes, and increased tooth decay.  San Francisco, Oakland, and Albany soon followed suit with similar measures. San Francisco, for instance, enacted a tax on the initial distribution of sugar-sweetened beverages and, in its statement of findings, declared:  "Studies show that sugary beverages flood the liver with high amounts of sugar in a short amount of time, and that this 'sugar rush' over time leads to fat deposits and metabolic disturbances that cause diabetes, cardiovascular disease, and other serious health problems."  San Francisco, like Berkeley before it, sought "to discourage the distribution and consumption of sugar-sweetened beverages in San Francisco by taxing their distribution."[2]

After other cities considered enacting similar measures, the beverage industry proposed an initiative to amend the California Constitution.  The initiative—titled the "Tax Fairness, Transparency and Accountability Act of 2018"—would have, among other things, severely curtailed the ability of local governments and their voters to pass new taxes, fees, and assessments, generally requiring two-thirds voter approval of any local tax, fee, or assessment.

---

[2]  The trial court took judicial notice of each of these local measures.  We do the same. (Evid. Code, § 459, subd. (a).)

But the initiative's sponsors ultimately agreed to withdraw the proposed initiative after the Legislature and the Governor agreed to enact the Groceries Act—an act that would prohibit new taxes on nonalcoholic sugar-sweetened beverages and certain other groceries. In a letter to the California State Assembly, the Governor wrote: Four "cities are considering passing a soda tax to combat the dangerous and ill effects of too much sugar in the diets of children. In response, the beverage industry has circulated a far reaching initiative that would, if passed, raise the approval threshold from 50% to two-thirds on all measures, on all topics in all 482 cities. Mayors from countless cities have called to voice their alarm and to strongly support the compromise which this bill represents." After calling the proposed initiative "an abomination," the Governor stated that the new law "must be signed." And so it was.[3]

The Groceries Act, with certain exceptions, provides that "a local agency shall not impose, increase, levy and collect, or enforce any tax, fee, or other assessment on groceries." (§ 7284.12, subd. (a).) The act defines "local agency" to include, among other entities, charter cities, general law cities, and counties (§ 7284.10, subd. (g); Gov. Code, § 7920.510) and defines "groceries" to include "any raw or processed food or beverage" but not "alcoholic beverages, cannabis, cannabis products, cigarettes, tobacco products, and electronic cigarettes" (§ 7284.10, subd. (f)). In prohibiting taxes on "groceries," the Groceries Act largely echoes existing law generally prohibiting taxes on "the sale of, and the storage, use, or other consumption in this state of, food products for human consumption." (§ 6359, subd. (a); see also Cal. Const., art. XIII, § 34.) But the

---

[3] The state's effort to prevent the proposed initiative from making the ballot may prove short-lived. After the beverage industry agreed to withdraw the proposed initiative, others moved to place a largely identical initiative on the ballot. (See Legis. Analyst, analysis of proposed Taxpayer Protection and Government Accountability Act (Jan. 19, 2022) <https://lao.ca.gov/BallotAnalysis/Initiative/2021-042> [as of March 27, 2023], archived at: <https://perma.cc/PTE5-NZR6>.)

Groceries Act's ban extends further than existing law, in part because existing law banning taxes on "food products" explicitly excludes carbonated beverages from the definition of "food products." (§ 6359, subd. (b)(3).)

Apart from generally banning taxes on groceries, the Groceries Act also imposes a penalty—namely, the loss of all revenue from sales and use taxes—against certain local agencies that violate its terms. The act states: "The California Department of Tax and Fee Administration shall not administer and shall terminate its contract to administer any sales or use tax ordinance of a local agency . . . if that local agency imposes, increases, levies and collects, or enforces any tax, fee, or other assessment on groceries . . . for which a court of competent jurisdiction has determined both of the following": (1) the tax, fee, or assessment "is in conflict with" the Groceries Act's general prohibition on any tax, fee, or other assessment on groceries, and (2) "[t]he tax, fee, or other assessment is a valid exercise of a city's authority under Section 5 of Article XI of the California Constitution with respect to the municipal affairs of that city." (§ 7284.12, subd. (f).)

II

*Charter Cities and the Home Rule Doctrine*

Because the Groceries Act's penalty provision is directed only toward local agencies having "authority under Section 5 of Article XI of the California Constitution" (§ 7284.12, subd. (f)), it covers only the one entity having authority under this provision—charter cities.

Article XI, section 5 of the California Constitution (article XI, section 5) sets forth the so-called "home rule doctrine" for charter cities—that is, for cities that have adopted a governing charter. (*State Building & Construction Trades Council of California v. City of Vista* (2012) 54 Cal.4th 547, 555 (*Vista*); see Cal. Const., art. XI, § 3, subd. (a).) It provides: "It shall be competent in any city charter to provide that the city governed thereunder may make and enforce all ordinances and regulations in respect to municipal affairs, subject only to restrictions and limitations provided in their several charters and in

6

respect to other matters they shall be subject to general laws. City charters adopted pursuant to this Constitution shall supersede any existing charter, and with respect to municipal affairs shall supersede all laws inconsistent therewith." (Cal. Const., art. XI, § 5, subd. (a).)

California voters initially approved the home rule doctrine over 100 years ago " 'upon the principle that the municipality itself knew better what it wanted and needed than the state at large, and to give that municipality the exclusive privilege and right to enact direct legislation which would carry out and satisfy its wants and needs.' " (*Vista, supra*, 54 Cal.4th at pp. 555-556.) Discussing the doctrine shortly after its adoption, our Supreme Court explained that it "was intended to give municipalities the sole right to regulate, control, and govern their internal conduct independent of general laws; and this internal regulation and control by municipalities comprise those 'municipal affairs' spoken of in the constitution." (*Fragley v. Phelan* (1899) 126 Cal. 383, 387.) Our Supreme Court has since explained that among the powers granted charter cities under this doctrine is "the power to tax for local purposes." (*City and County of San Francisco v. Regents of University of California* (2019) 7 Cal.5th 536, 545.)

Under the home rule doctrine, as currently written in article XI, section 5, a charter city's law is not preempted simply because it conflicts with a state law. (*Sonoma County Organization of Public Employees v. County of Sonoma* (1979) 23 Cal.3d 296, 316-318.) Nor is it necessarily preempted even when the Legislature explicitly intends preemption. (*Ibid.*) It is instead preempted only when it conflicts with a state law, the state law covers a subject of statewide concern, and the state law is " 'reasonably related to . . . resolution' of that concern" and " 'narrowly tailored' to avoid unnecessary interference in local governance." (*Vista, supra*, 54 Cal.4th at p. 556.) Charter cities are, in this respect, distinct from counties and general law cities, for unlike charter cities, their laws are preempted when they are "in conflict with" state law. (Cal. Const., art. XI, § 7; see *American Financial Services Assn. v. City of Oakland* (2005) 34 Cal.4th 1239, 1251.)

III

*The Aftermath of the Groceries Act*

Following the Groceries Act's passage, nascent efforts to enact a soda tax in several charter cities were abandoned. One example involves the City of Stockton. A nonprofit there collected over 6,000 signatures supporting a tax on sugar-sweetened drinks. It then scheduled a meeting with Stockton's City Council to petition the city to put on the ballot a measure taxing these drinks. But before the meeting took place, the Legislature passed the Groceries Act and the nonprofit abandoned its effort to enact the tax, finding the act's threatened penalty—the loss of all revenues from sales and use taxes—too severe. Evidencing Stockton's heavy reliance on revenues from sales and use taxes, the city's recent budgets showed these revenues contributed about 35 percent of the city's general fund revenue.

Similar considerations also ended efforts to enact a tax on sugar-sweetened drinks in the City of Santa Cruz. Santa Cruz's City Council placed on the 2018 ballot a measure that, if approved, would have taxed these types of drinks. But following the passage of the Groceries Act, Santa Cruz's City Manager recommended that the city council pull the proposed measure. He wrote: "Should the City retain the measure on the November 2018 ballot and voters of the City support it, and if it then survives legal challenge, the State will terminate its contract to collect and disburse any of the sales and use taxes in effect under City ordinances. . . . Any revenue benefits from a Sugary-Sweetened Beverage Tax would be instantly undermined, and its purpose thwarted, in this scenario." A few days after the city manager's recommendation, Santa Cruz's City Council removed the proposed measure from the ballot.

Several years later, in 2021, Santa Cruz's City Council once again considered taxing sugar-sweetened drinks. But in the end, it declined to pursue a tax on these drinks. Although it believed the Groceries Act's "penalty provision . . . is probably unconstitutional," it concluded "the City of Santa Cruz cannot risk submitting a tax on

8

soda or other sugary beverages to its voters to test the constitutionality of the penalty because the potential financial risk is too great for the City."  It reasoned that "sales and use taxes generate 20% of the annual revenue for the [City's] general fund and the loss of this revenue would be financially devastating to the City."

IV

*Plaintiffs' Suit*

Cultiva La Salud—a nonprofit that, among other things, promotes healthy diets—and Martine Watkins—a Santa Cruz City Council member appearing in her individual capacity—sued the Department over the Groceries Act's penalty provision.  Cultiva La Salud and Watkins (collectively, plaintiffs) asserted the penalty provision "is unconstitutional because it seeks to override Article XI, Section 5 of the California Constitution by severely penalizing charter cities if they properly exercise their constitutional home rule authority."  Plaintiffs added that the drafters of the provision "[p]robably" understood that the Groceries Act's general ban on grocery taxes "would not apply to charter cities" and so included "a carefully drafted penalty provision targeted directly at charter cities to discourage them from exercising their constitutional home rule authority to impose taxes on sugary beverages."  Plaintiffs sought a declaration that the Groceries Act's penalty provision is unlawful, an injunction barring enforcement of the provision, and a writ of mandate directing the Department not to implement the provision.

The Department, in opposition, contended the issue was not ripe for review.  It reasoned that the constitutionality of the penalty should not be decided in a facial challenge; it instead should be decided only after a charter city had enacted a tax triggering the Groceries Act's penalty.  The Department also rejected plaintiffs' reading of the act's penalty provision.  In its view, the act does not penalize a charter city when its grocery tax "is a valid exercise" of its constitutional powers under the home rule doctrine; it instead penalizes a charter city only when its grocery tax "would *otherwise* be

9

a valid exercise of the local government's constitutional powers, *in the absence of the Groceries Act*. In other words, the penalty will apply only if the Groceries Act is the sole reason for finding that the tax is prohibited." Lastly, even if the penalty provision were improper, the Department contended the provision's offending language could be severed to save the rest of the provision.

The trial court ruled in plaintiffs' favor. Starting with ripeness, the court found the case ripe for review because plaintiffs had mounted a facial challenge—which, the court wrote, is "generally considered ripe the moment the challenged law is passed"—and because their petition "raises an important legal question that might never be answered if it were considered unripe for review since charter cities, like Santa Cruz, may elect not to enact a local tax on sugary beverages rather than face the financial risk of the Penalty Provision being imposed." Turning to the merits, the court found the Groceries Act's penalty provision unlawful because it only penalizes charter cities that validly exercise their constitutional rights. The court also rejected the Department's position that the penalty provision could be saved by severing certain words. The court later entered judgment in plaintiffs' favor and issued an order granting plaintiffs' petition for writ of mandate.

The Department timely appealed.

DISCUSSION

I

*Ripeness*

Before turning to the merits of the parties' dispute, we start with the issue of ripeness. Although the Department no longer disputes that this case is ripe for review, several amici curiae—namely, the California Chamber of Commerce, California Grocers Association, California Retailers Association, Consumer Brands Association, and American Beverage Association (collectively, the American Beverage amici)—maintain that this matter is not ripe. Because ripeness is a jurisdictional requirement that we have

10

an independent duty to consider, even when the parties decline to raise it, we will briefly address the issue here.

" 'The ripeness requirement, a branch of the doctrine of justiciability, prevents courts from issuing purely advisory opinions.' " (*Vandermost v. Bowen* (2012) 53 Cal.4th 421, 452.) It is " 'primarily bottomed on the recognition that judicial decisionmaking is best conducted in the context of an actual set of facts so that the issues will be framed with sufficient definiteness to enable the court to make a decree finally disposing of the controversy.' " (*Ibid.*) The doctrine ensures " 'that the facts have sufficiently congealed to permit an intelligent and useful decision to be made,' " but it " 'should not prevent courts from resolving concrete disputes if the consequence of a deferred decision will be lingering uncertainty in the law, especially when there is widespread public interest in the answer to a particular legal question.' " (*Ibid.*, italics omitted.)

The American Beverage amici argue, as the Department did at the trial level, that a challenge to the Groceries Act's penalty provision will not be ripe for review until there is a "local tax against which to measure [the] state law." According to these amici curiae, then, a challenge to the act's penalty provision will be ripe for review only after a charter city elects to subject itself to the act's severe penalties. Only at that time, they claim, can a court resolve whether the Groceries Act's terms and the local tax actually conflict.

We find differently. The American Beverage amici's logic, if accepted, would provide a framework for insulating laws from judicial review: The state could enact laws—even constitutionally suspect ones—that threaten exorbitant penalties against those who violate their terms; and because no one would likely violate these laws for fear of the penalties, no claim would ever be ripe for review. We reject this approach. Similar to the trial court, we find the facts here " 'have sufficiently congealed' " to allow resolution of plaintiffs' facial challenge to the Groceries Act's penalty provision. (*Vandermost v. Bowen, supra*, 53 Cal.4th at p. 452.) We also find the American Beverage amici's

11

request that we wait until an actual local tax is at issue is effectively an effort to evade judicial review altogether, for no charter city may ever enact a soda tax given the Groceries Act's crippling penalties.  Under these circumstances, we find the parties' dispute ripe for review.  (See *Vandermost*, at p. 452 [the ripeness doctrine " 'should not prevent courts from resolving concrete disputes if the consequence of a deferred decision will be lingering uncertainty in the law' " (italics omitted)].)[4]

II

*The Groceries Act's Penalty Provision*

Turning to the merits, the Department challenges the trial court's decision for two reasons.  First, it contends the court misconstrued the Groceries Act's penalty provision.  The court, again, found this provision improperly penalizes charter cities that validly exercise their constitutional powers.  It reasoned that the act's penalty explicitly applies only when a charter city's tax, fee, or other assessment on groceries "is a valid exercise" of the city's authority under the home rule doctrine.  In the Department's reading, however, the penalty instead applies only when a charter city's tax, fee, or other assessment on groceries "would *otherwise* be a valid exercise of [the] city's constitutional authority, if not for the Groceries Act."  Second, even if the trial court properly construed

---

[4] We also reject the American Beverage amici's argument that we must resolve whether the Groceries Act preempts local taxes on groceries—a constitutional issue—before resolving the parties' competing interpretation of the act's penalty provision—a statutory issue.  The parties' dispute, which we will cover more below, boils down to this:  Does the Groceries Act's penalty provision, on its face, penalize only lawful conduct (i.e., conduct that is a valid exercise of a charter city's constitutional rights) or only unlawful conduct (i.e., conduct that is *not* a valid exercise of a charter city's constitutional rights)?  Because "courts should avoid resolving constitutional issues if a case can be decided on statutory grounds" (*De Lancie v. Superior Court* (1982) 31 Cal.3d 865, 877, fn. 13), we will start with this statutory question.  And because resolving this statutory issue is enough to dispose of this matter, we need not go further in our opinion and issue, in effect, an advisory opinion on the constitutional issue of preemption.

12

the Groceries Act, the Department contends the court should have severed the "valid exercise" language and certain other words from the penalty provision and then retained the rest of the provision. We reject both arguments.

A.    *Bradley-Burns*

To understand the Groceries Act and its penalty provision, it is helpful to start with the Bradley-Burns Uniform Local Sales and Use Tax Law (Bradley-Burns) (§ 7200 et seq.)—a law that, as the Department contends, inspired parts of the Groceries Act.

The Legislature enacted Bradley-Burns in 1955. (*Rivera v. City of Fresno* (1971) 6 Cal.3d 132, 136, disapproved of on other grounds in *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 15.) Before the law's enactment, different cities imposed different sales and use taxes that had different collection schemes. (See *Century Plaza Hotel Co. v. City of Los Angeles* (1970) 7 Cal.App.3d 616, 624, fn. 6.) In Bradley-Burns, "the Legislature enacted a uniform local sales and use tax law" to replace this scheme. (*Rivera v. City of Fresno*, at p. 136.) It also created incentives to convince counties and cities to participate in the new taxation law. Counties, which previously lacked the ability to impose sales and use taxes, would benefit through new " 'authority to impose sales and use taxes as a means of raising additional revenue.' " (*Ibid.*) Cities, in turn, would benefit through " 'a plan of state administration which w[ould] relieve them from operating collection systems of their own.' " (*Ibid.*) Should a county or city choose to participate in Bradley-Burns, it would among other things, need to contract with the Board of Equalization, the agency formally charged with implementing Bradley-Burns, " 'to perform all functions incident to the administration or operation of the [local] sales and use tax ordinance.' " (*Ibid.*)

Over time, the Legislature expanded the scope of Bradley-Burns and made city participation in the law—once voluntary—mandatory for those seeking to impose sales and use taxes. In 1968, the Legislature amended the law to "declare[] that the state, by enactment of the Sales and Use Tax Law and the Bradley-Burns Uniform Local Sales and

13

Use Tax Law, has preempted this area of taxation." (*Century Plaza Hotel Co. v. City of Los Angeles, supra*, 7 Cal.App.3d at p. 624.) The Legislature found the amendment necessary after certain cities demonstrated an " 'interest in returning to the older system of independent sales and use tax administration.' " (*Ibid.*, fn. 6.) The Legislature believed that should these cities return to this " 'older system,' " taxpayers who had the least ability to pay would face higher consumer taxes, businesses would leave these cities, and the " 'general business climate in California' " would deteriorate. (*Ibid.*) To prevent this scenario, the Legislature declared its intent to preempt local laws in this area. (*Ibid.*) It also, with the addition of section 7203.5, directed the Board of Equalization to "not administer any sales or use tax ordinance of a city, county or city and county, if such city, county or city and county imposes a sales or use tax in addition to the sales and use taxes imposed under an ordinance conforming to the provisions of [Bradley-Burns]"—a penalty that, if applied, would deprive the local government of all revenue from its sales and use taxes. (Stats. 1968, ch. 1265, § 1, pp. 2387-2388.)

In 1996, the Legislature again amended Bradley-Burns—this time to prevent local governments from imposing certain transient occupancy taxes on meals. In an initial draft of the amendment, the Legislature proposed amending Bradley-Burns to direct the Board of Equalization not to administer any sales or use tax ordinance of a local government if the local government imposed these transient occupancy taxes. (Assem. Bill No. 3407 (1995-1996 Reg. Sess.), as amended May 24, 1996.) According to the legislative history, "[s]upporters have felt that this approach is their only recourse since charter cities have broad municipal powers and would not be impacted by a state prohibition on levying the [transient occupancy taxes] on meals." (Sen. Rev. & Tax. Com., analysis of Assem. Bill No. 3407 (1995-1996 Reg. Sess.) as amended June 26, 1996, p. 3.) These expressed concerns acknowledged the peculiar powers of charter cities under the home rule doctrine. (See *id.*, p. 1.)

14

But after a senate committee analysis opined that the Legislature might be able to preempt charter cities from imposing these taxes (see Sen. Rev. & Tax. Com., analysis of Assem. Bill No. 3407, *supra*, as amended June 26, 1996, p. 3), the Legislature changed its approach.  It added a statute—section 7282.3—prohibiting local governments, including charter cities, from levying the objected-to taxes.  (Stats. 1996, ch. 940, § 2, p. 5317.)  But as a backstop, it also enacted an amendment to section 7203.5 that would "become operative only if the provisions of Section 7282.3 . . . are held to be inapplicable to charter cities."  (Stats. 1996, ch. 940, §§ 1, 4, pp. 5315-5317.)  As conditionally amended, section 7203.5 imposes the penalty that the Legislature initially proposed:  The Board of Equalization "shall not" administer any sales or use tax ordinance of a local government if the local government imposes the prohibited transient occupancy tax. (Stats. 1996, ch. 940, § 1, pp. 5315-5317.)

B.      *The Groceries Act*

Over 20 years later, the Legislature enacted the Groceries Act—taking inspiration from Bradley-Burns and particularly its 1996 amendment.  Section 7284.12 of the Groceries Act, as covered, generally prohibits local agencies from "impos[ing], increas[ing], levy[ing] and collect[ing], or enforc[ing] any tax, fee, or other assessment on groceries."  (§ 7284.12, subd. (a).)  It also penalizes certain local agencies that violate this prohibition, stating:  "The California Department of Tax and Fee Administration shall not administer and shall terminate its contract to administer any sales or use tax ordinance of a local agency under [Bradley-Burns] if that local agency imposes, increases, levies and collects, or enforces any tax, fee, or other assessment on groceries . . . for which a court of competent jurisdiction has determined both of the following":  (1) the tax, fee, or assessment "is in conflict with" the Groceries Act's general prohibition on any tax, fee, or other assessment on groceries, and (2) "[t]he tax, fee, or other assessment is a valid exercise of a city's authority under Section 5 of Article XI of the California Constitution with respect to the municipal affairs of that city."  (§ 7284.12, subd. (f).)

15

Because, again, article XI, section 5 concerns only charter cities, only charter cities are potentially subject to section 7284.12's penalty.

In section 7284.12, as in the 1996 amendment to Bradley-Burns, the Legislature evidenced a concern about its ability to preempt charter cities from enacting certain taxes. The Legislature also, as in the earlier Bradley-Burns amendment, attempted to address this concern through a two-pronged approach. First, in both the Groceries Act and the Bradley-Burns amendment, the Legislature prohibited local governments from enacting certain types of taxes. (See §§ 7282.3, 7284.12, subd. (a).) Second, as a backstop, the Legislature also threatened severe penalties in the event these prohibitions proved ineffective against charter cities. Under the Bradley-Burns amendment, these penalties will apply only if the prohibitions in the amendment "are held to be inapplicable to charter cities." (Stats. 1996, ch. 940, §§ 1, 4, pp. 5315-5317.) And under the Groceries Act, these penalties will apply only if a charter city's tax, fee, or assessment on groceries—although prohibited—remains "a valid exercise of [the] city's authority under Section 5 of Article XI of the California Constitution with respect to the municipal affairs of that city." (§ 7284.12, subd. (f).) Both laws, then, seek to prevent charter cities from enacting certain taxes, either through a direct prohibition or, if that proves ineffective, through the threat of severe penalties.

Considering this purpose, we find, like the trial court, that section 7284.12 improperly uses the threat of crippling penalties to chill charter cities from exercising their constitutional rights. As our Supreme Court has explained, " '[i]f a law has "no other purpose . . . than to chill the assertion of constitutional rights by penalizing those who choose to exercise them, then it [is] patently unconstitutional." ' " (*In re King* (1970) 3 Cal.3d 226, 235-236 (*King*).) That describes section 7284.12's penalty provision here. It serves to penalize a charter city only when its tax, fee, or other assessment on groceries "is a valid exercise of [the] city's authority under Section 5 of Article XI of the California Constitution with respect to the municipal affairs of that

16

city." (§ 7284.12, subd. (f).)  That intentional penalty on a charter city's lawful exercise of its constitutional powers cannot stand.

Neither the Department's nor the American Beverage amici's arguments persuade us to find differently.  We consider first the Department's argument.  It asserts that section 7284.12 is not, as it states, intended to penalize a charter city only when its tax, fee, or other assessment on groceries "is a valid exercise of [the] city's authority under Section 5 of Article XI of the California Constitution."  (§ 7284.12, subd. (f).)  It is instead, the Department argues, intended to penalize a charter city only when its tax, fee, or other assessment on groceries "would *otherwise* be a valid exercise of [the] city's constitutional authority, if not for the Groceries Act."  Put another way, according to the Department, when the Legislature referenced a city's tax, fee, or assessment that "is a valid exercise" of the city's constitutional authority, it really meant a city's tax, fee, or assessment that, because of the Groceries Act, "is *not* a valid exercise" of the city's constitutional authority.  The Department adds that this construction avoids a reading that would render section 7284.12, subdivision (f) unlawful and is "consistent with the Legislature's stated intent for the provisions of the Groceries Act 'to be construed liberally to effectuate their intent, policy, and purposes.' "

But although the Legislature intended a liberal construction of the Groceries Act (§ 7284.13), and although courts can construe ambiguous statutes to avoid constitutional doubts (*Steen v. Appellate Division of Superior Court* (2014) 59 Cal.4th 1045, 1054), neither of those considerations advance the Department's position here.  The fundamental problem with its position is that it departs from the statute's plain text.  Section 7284.12 does not refer to a tax, fee, or other assessment that would have been a valid exercise of a city's constitutional authority if not for the Groceries Act; it refers instead to a tax, fee, or other assessment that "*is* a valid exercise" of a city's constitutional authority.  (§ 7284.12, subd. (f)(2).)  And again, that language is problematic.  For as even the Department concedes, if a tax imposed by a charter city truly is a valid exercise of the city's authority

17

under article XI, section 5, then "the Legislature cannot prohibit the tax or penalize the city for imposing it." But that is precisely what section 7284.12, subdivision (f) does—it penalizes a charter city when its tax, fee, or other assessment on groceries "is a valid exercise" of the city's constitutional authority.

Apart from lacking textual support, the Department's interpretation lacks rational reasoning. In its view, again, the Legislature wanted section 7284.12's penalty to apply only when a city's tax, fee, or other assessment on groceries "would otherwise be a valid exercise of [the] city's constitutional authority, if not for the Groceries Act." (Italics omitted.) The Department explains that this "requirement prevents the penalty from being imposed when a tax is invalid for reasons independent of the Groceries Act, such as a failure to comply with the tax limitation rules of Propositions 13, 218, or 26." But we find no rational reason for concluding that the Legislature wanted to impose penalties when a charter city's tax violated the Groceries Act, but then wanted to impose no penalties when the city's tax happened to violate some other law too.

More sensible is our reading covered above: The Legislature wanted to discourage charter cities from enacting a tax, fee, or assessment on groceries, even if it could not lawfully prohibit them from doing so. That reading explains why the Legislature directed the penalty toward charter cities only—the one local agency with home rule authority under article XI, section 5. It explains why the Legislature imposed the penalty only when a charter city "valid[ly] exercise[s]" its constitutional powers under the home rule doctrine. And it explains why the Legislature believed the penalty necessary in the first place. It also, as mentioned, comports with the statute's plain text and the Legislature's prior approach in the 1996 Bradley-Burns amendment.

We turn next to the American Beverage amici's arguments. Unlike the Department, these amici curiae—one of which sponsored the bill that became the Groceries Act—acknowledge the Legislature's intent in the penalty provision: It wanted to penalize a charter city that "adopts a tax that conflicts with the Act, and [that]

18

successfully argues to a court that the tax is permissible under its constitutional home rule authority." Despite acknowledging this intent to penalize lawful conduct, the American Beverage amici argue the penalty provision is valid nonetheless for two reasons.

First, they assert section 7284.12's penalty is lawful because the Legislature intended to preempt—and in fact did preempt—local grocery taxes. We agree the Legislature intended to preempt most local taxes in this area. Section 7284.9 explains, for instance, that "[i]t is the intent of the Legislature to regulate the imposition and collection of taxes and other charges on groceries comprehensively and to occupy the field to the exclusion of local action except as specifically provided in this chapter." (§ 7284.9, subd. (a).) It adds "[t]hat the promotion of uniformity in the taxation of groceries is a matter of statewide concern and, therefore, is not a municipal affair as that term is used in Section 5 of Article XI of the California Constitution." (*Id.*, subd. (b).) But as covered, section 7284.12's penalty is not intended to cover conduct that is preempted; it is instead intended to cover conduct that is *not* preempted in an effort to " ' "chill the assertion of constitutional rights." ' " (*King, supra*, 3 Cal.3d at p. 235.) That is improper.

Second, the American Beverage amici fault the trial court for failing to consider whether section 7284.12's penalty was reasonably calculated to advance the legitimate regulatory objectives of uniformity of taxation—which, according to these amici curiae, is the appropriate test to apply in this instance. But again, the Legislature's sole purpose in imposing the penalty was " ' "to chill the assertion of constitutional rights." ' " (*King, supra*, 3 Cal.3d at p. 235.) That is not, as the American Beverage amici claim, a legitimate regulatory objective. It is instead a " ' "patently unconstitutional" ' " objective. (*Ibid.*; see *California Teachers Assn. v. State of California* (1999) 20 Cal.4th 327, 338 [if a certain statute had "no purpose other than to chill the exercise of the right of teachers to demand a hearing before they are dismissed or suspended, we must hold the statute unconstitutional on its face"]; *Sonoma County Organization of Public Employees v. County of Sonoma, supra*, 23 Cal.3d at p. 319 ["while the state may impose

19

conditions upon the granting of a privilege, . . . 'constitutional power cannot be used by way of condition to attain an unconstitutional result' "].)[5]

C.      *Severance*

Having found the Groceries Act's penalty provision unlawful, we consider next the Department's claim that the provision can be saved by severing the offending language.

The Groceries Act contains a severance clause in section 7284.14.  That provision provides:  "If any provision of this chapter or its application to any person or circumstance is held invalid, the remainder of the chapter or the application of the provision to other persons or circumstances is not affected."  (§ 7284.14.)  Although this "clause establishes a presumption in favor of severance" (*California Redevelopment Assn. v. Matosantos* (2011) 53 Cal.4th 231, 270), courts may sever an invalid provision "if, and only if, it is 'grammatically, functionally and volitionally separable' " (*Hotel Employees & Restaurant Employees Internat. Union v. Davis* (1999) 21 Cal.4th 585, 613).

According to the Department, the trial court went too far when it found the whole of section 7284.12, subdivision (f) unenforceable.  In its view, the court instead should have severed section 7284.12, subdivision (f)(2) and "eliminat[ed] the words 'both of' from 'both of the following' in the sentence immediately preceding subdivisions (f)(1) and (f)(2)."  Under this approach, section 7284.12, subdivision (f) would read as follows: "The California Department of Tax and Fee Administration shall not administer and shall terminate its contract to administer any sales or use tax ordinance of a local agency under

---

[5]  Because we affirm the trial court's ruling premised on the home rule doctrine, we need not consider plaintiffs' alternative arguments that the penalty provision unconstitutionally changes the method of distributing tax revenues and chills the rights of citizens to petition their governments to enact taxes on sugar-sweetened drinks.

[Bradley-Burns] if that local agency imposes, increases, levies and collects, or enforces any tax, fee, or other assessment on groceries . . . for which a court of competent jurisdiction has determined ~~both of~~ the following: [¶] (1) The tax, fee, or other assessment is in conflict with the prohibition set forth in subdivision (a), and is not a tax, fee, or other assessment described in subdivision (b) or (d). ~~[¶] (2) The tax, fee, or other assessment is a valid exercise of a city's authority under Section 5 of Article XI of the California Constitution with respect to the municipal affairs of that city.~~"

But as the Department acknowledges, this change would significantly alter the scope of section 7284.12. As currently drafted, the statute threatens to penalize only charter cities as only charter cities can "valid[ly] exercise . . . authority under Section 5 of Article XI of the California Constitution." (§ 7284.12, subd. (f)(2).) But under the Department's edits, the statute would instead threaten to penalize all "local agenc[ies]"— a term defined to include, among other entities, charter cities, general law cities, and counties. (§ 7284.10, subd. (g); Gov. Code, § 7920.510.) The Department concedes this change but claims it is insignificant because counties and general law cities "are less likely to impose a prohibited tax." We find differently. Severance is a tool for removing offensive language when the language is grammatically, functionally, and volitionally separable—not a tool for creating new penalties (in this case, penalties against counties and general law cities) that the Legislature never even considered. Because we cannot say that the Legislature would have adopted the scheme that the Department envisions, we reject its proposed edits. (See *California Redevelopment Assn. v. Matosantos, supra*, 53 Cal.4th at p. 271 [severance is inappropriate when the resulting scheme is not one the Legislature necessarily would have adopted].)

21

## DISPOSITION

The judgment is affirmed.  Plaintiffs are entitled to recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

/s/
BOULWARE EURIE, J.

We concur:

/s/
HULL, Acting P. J.

/s/
EARL, J.

22